RISSER *v.* CITY OF LITTLE ROCK.

5-724                                                    281 S. W. 2d 949

Opinion delivered July 4, 1955.

[Rehearing denied October 3, 1955.]

*John R. Thompson, Bernal Seamster, Joseph C. Kemp* and *Cooper Jacoway,* for appellant.

*O. D. Longstreth, Jr., Dave E. Witt* and *Mehaffy, Smith & Williams,* for appellee.

ROBINSON, J.   This is an effort by some of the residents of the Fourche Dam community, which is east of Little Rock in Pulaski County, to prevent the City of Little Rock from relocating a small portion of East 10th Street and East 26th Street in that city.

East 10th Street is on the north side of the Little Rock Municipal Airport and East 26th Street is on the south side.   To facilitate the operation of modern aircraft, it is necessary for the city to install additional equipment at the ends of the northeast-southwest runway at the airport.   In order to do this, the city seeks to abandon a small portion of East 10th Street and establish

a new route one block north on 9th Street. This will require traffic to make two sharp turns in traveling from 10th to 9th Street. By actual timing, it takes 35 seconds longer to travel the new route than it does the old one. On the south side of the airport, the city has relocated East 26th Street for a distance of a little over half a mile. This was done by building a crescent shaped loop which makes the new route approximately 600 feet longer than the old route. The old route is in such a condition that it cannot be traveled, hence the comparative time it takes to travel the two routes is not shown, but it requires a total of one minute and 15 seconds to drive the entire new route at a usual rate of speed.

Appellants filed suit to enjoin the city from abandoning the old routes in favor of the new ones. The chancellor denied the injunction and the residents of the Fourche Dam community have appealed. Appellants contend that "the City did not comply with the statutory requirement of securing approval from the Pulaski County Planning Commission; the City had no control or jurisdiction to close the roads in question; the City has failed to provide comparable roads that are equally safe and covenient; the fact that the plaintiffs' property does not abut on the portion of the road closed does not prevent the plaintiffs from suffering damages for which they are entitled to reimbursement; the court should have sustained the plaintiffs' plea of res adjudicata." Appellants also contend that the city is precluded from closing the roads by a contract made with the residents of the area. There are three points that merit discussion: first, is the city bound by a contract; second, is the cause res judicata; and third, have appellants suffered special and peculiar damages.

As to the question of whether the city is bound by an agreement heretofore made with the residents of the Fourche Dam area, appellants introduced evidence to the effect that, in 1934, the city undertook to close East 17th Street and the county road known as Fourche Dam Pike; that the residents of the Fourche Dam community ob-

jected, resulting in an agreement between the city officials, the county judge and the residents of that area, that the residents would not oppose the closing of East 17th Street, or seek damages for the closing of that street, if the city and county would construct a paved road on the north side of the airport; and that, in 1940, the agreement was modified whereby the city was to improve East 10th Street, and improve and maintain East 26th Street with a right of way of 160 feet. Appellants contend that this was a valid and binding contract between the Fourche Dam residents and the city, and that the city is not now at liberty to change the location of East 10th and East 26th Streets, which are the roads furnishing access to the Fourche Dam community.

Any attempt on the part of the city to enter into a contract relating to the permanent establishment or abandonment of its public streets would be *ultra vires*. In establishing, maintaining or abandoning its streets, the city acts in a governmental capacity and no city administration has the authority to bind a future administration in such matters. Cities have the authority to control, supervise and regulate all streets within their corporate limits. Ark. Stats., §§ 19-2313, 19-2304. "A municipality cannot bind itself by a perpetual contract, or by one which lasts an unreasonable length of time. Thus, a municipal corporation cannot obligate itself to keep a particular street open forever." 38 Am. Jur. 174. It is also said in 25 Am. Jur. 553: "It is established that the governmental power to control and regulate the use of highways in the public interest cannot be surrendered, or impaired by contract. Particularly as to municipalities, control over streets is given to them for the benefit of the public. It is in the nature of a trust held by the corporation, from which arises a continuing duty on the part of such corporation to exercise legislative control over their streets at all times and places when demanded by the public good. They have no power, by contract, ordinance, or bylaw, to cede away, limit, or impair their legislative or governmental powers, or to disable themselves from performing their public duties in this regard,

at least without the explicit consent of the legislature, or to delegate the exercise of such powers and the performance of such duties to others, so as to relieve themselves of responsibility in this respect.'' In 37 Am. Jur. 735, 736, it is said: ''It is declared to be against public policy to permit a municipal corporation to part with any of its legislative power. In the absence of a clear grant of power from the legislature, the municipal authorities can do nothing which amounts in effect to the alienation of a substantial right of the public. It cannot obligate itself not to exercise such powers, and a contract in which it purports to do so, even upon valuable consideration, is void. Thus, a municipal corporation cannot, by contract or otherwise, divest itself of its general police power, or of the power of eminent domain which has been delegated to it by the legislature, or of the power of taxation.'' The law is clear that a city cannot contract away perpetually its rights, obligations and duties in connection with the public streets.

Next we reach the question of *res judicata*. Ordinance 9004 was adopted by the Little Rock City Council on September 22, 1952. Under the provisions of the ordinance, the portions of East 10th and East 26th streets involved herein were abandoned. The ordinance set out that the city council had ascertained that portions of such streets ''have not been actually used by the public generally for a period of at least five years subsequent to the filing of the plat.'' It is perfectly obvious that the ordinance was adopted on authority of Ark. Stats., § 19-3825, which provides: ''In all cases where the owner of property within a city or town shall have dedicated, or may hereafter dedicate, a portion of such property to the public use as streets or alleys by platting such property and causing such plat to be filed for record, as provided by law, and any street or alley, or section thereof, shown on the plat so filed shall not have been actually used by the public as a street or alley for a period of five years, the City or Town Council shall have power to vacate and abandon the street or alley, or any portion thereof, by proceeding in the manner hereinafter set

forth." After the adoption of Ordinance 9004, appellants in the case at bar filed a suit to enjoin the city from enforcing the ordinance by closing a portion of East 10th and East 26th streets. The complaint alleged, *inter alia,* that "The defendants are now attempting to close, block, obstruct and barricade a portion of said 10th Street and have already begun to tear up the roadway and to interfere with travel along said road." An intervention was filed alleging that "The defendants are purporting to act under the authority of Ordinance No. 9004 of the City. Said ordinance is void and a nullity. Said ordinance was not enacted in the manner required by law and contains a recitation and finding that the road or street in question has not been used for a period of at least five years subsequent to the filing of the plat. In truth and in fact, said road has been constantly and continuously used by the public, including the plaintiff and all others similarly situated, and said use has continued without abatement or interruption at the time it was opened until and through the present time. Because of the invalidity of the ordinance, the portion of East 10th Street that purports to be affected by the ordinance has not been vacated and the defendants have no right or authority to attempt to block, barricade, close and obstruct any portion of East 10th Street and the efforts of the defendants to close, barricade, block and obstruct East 10th Street are without authority of law and are of great damage to this plaintiff and to all others similarly situated." Both a demurrer and an answer filed by the city asserted the validity of Ordinance 9004 as a complete defense, and did not attempt to justify the closing of the streets on any other ground. In fact, there was no other ordinance authorizing the closing of the streets. On a final hearing, there was a decree enjoining the defendants from closing portions of the streets involved. (The pleadings must have been considered amended to apply also to East 26th Street.)

If Ordinance 9004 was void because it was based on the false premise that the streets in question had not been used for five years, then the city was without au-

thority to close the streets and the injunction was granted properly by the trial court. It appears conclusive that the streets had been regularly used within the five year period, and therefore, that Ordinance 9004 was not passed in accordance with Ark. Stats., § 19-3825, authorizing the closing of streets where they have not been used for five years. There was no appeal from the Chancellor's decree enjoining the city from closing a portion of the streets. The date of the decree was June 26, 1953.

A short time later, on August 10, 1953, the City Council, acting on authority of Ark. Stats., § 19-2304, which gives the city the power to vacate portions of public streets, adopted Ordinance 9290. It provides for the closing of the same portions of East 10th and East 26th streets as did the void Ordinance 9004. Seven days after the adoption of Ordinance 9290, the case at bar was filed attacking its validity. A copy of the ordinance is made a part of the complaint. (It will be recalled that this ordinance had not been passed by the City Council at the time of the trial involving the validity of Ordinance 9004.) The prayer of the complaint in the present case asks that Ordinance 9290 be declared null and void. An intervention filed by one of the appellants is to the same effect, and asks that the city be enjoined from closing the streets. There was no effort to enforce the order made in the first suit enjoining the city from closing the streets. The only issue in the first suit was the validity of Ordinance 9004. The city asserted no authority for closing the streets except the authority bestowed by that ordinance. True, the plaintiffs attacking the validity of the ordinance alleged damages, but such allegations were necessary to give them a standing in court. Without an allegation of damages, the complaint and intervention would have been demurrable. If the cause is *res judicata,* as appellants claim, then the filing of the present suit was wholly unnecessary. The injunction in the first suit would have been sufficient to prevent the closing of the streets.

The principle of *res judicata* is so well known that it need not be restated here. One of the necessary elements of the doctrine is that the issues must be the same. In the first case, the only real issue was the validity of Ordinance 9004. The right of the city to close a portion of the streets, had this ordinance been found valid, was never considered. The city's right to close a portion of the streets under the authority of Ordinance 9290 was not involved. This ordinance was not in effect when the first case was tried. At the time of the first suit, the city could close portions of the streets only under the authority of Ordinance 9004, and the only issue raised in those pleadings was the validity of that ordinance. Hence, the issue in the first case is not the same as the issue in the case at bar, and the cause is therefore not *res judicata*.

Next we come to the question of whether the appellants suffered special and peculiar damages. None of the plaintiffs own property abutting the portions of the streets being closed, but even if it is conceded that appellants have been damaged by the relocation of the roads, they have suffered no peculiar or special damages which could give rise to a cause of action. Travelers on 10th Street, as relocated, must turn two corners and travel a little farther, which requires less than a minute in additional time. This slight inconvenience, however, is not peculiar to appellants alone. This street is an outlet from the city to one of the most thickly populated sections of the county. Every person that travels the street suffers the same inconvenience as the appellants.

The principal contention of the appellants in regard to East 26th Street is that their property is especially suitable for industrial development and that the change in the street materially lessens the value of the property from that standpoint. They say that 26th Street, before being relocated, had a 160 foot right of way. (The paved section was formerly 18 feet wide, while the new pavement is 22 feet wide.) Appellants contend that the 160 foot right of way would be more attractive to industries than the new 40 foot right of way. The city owns all of

the property on both sides of the old right of way as well as that on both sides of the new right of way. No doubt the city is anxious to assist in the industrial development of the county and it is not unreasonable to believe that the city would cooperate to the fullest extent in providing the necessary facilities for industries. But, be that as it may, the fact remains that appellants have access to the city and that they have suffered no peculiar and special damages. Appellants own a few hundred acres of land, but the streets in question lead to an area consisting of thousands of acres of level, alluvial soil that is the same as that owned by appellants.

On the question of damages, the case of *Little Rock and Hot Springs Western Railroad Company* v. *Newman*, 73 Ark. 1, 83 S. W. 653, is in point. There the court said:

"The rule of law governing cases of this kind is that no private action on account of an act obstructing a public and common right will lie for damages of the same kind as those sustained by the general public, even though the inconvenience and injury to the plaintiff be greater in degree than to other members of the public; but an action will lie for peculiar or special damage of a kind different from that suffered by the general public, even though such damage be small, or though it be not confined to plaintiff, but be suffered by many others."

The court further said:

"If a railroad is constructed across the highway leading from the home of one who lives in the country to the town or city to which his business requires that he must often go, it is very natural that he should feel that the danger of delay or accident to which he may thus be at times subjected renders his property less desirable as a home, while as a matter of fact its market value may be actually increased by the construction of the railroad. If he suffers an injury in such a case, it is general, and not special. If one owning a home in the country could recover damages in such a case, the man who owns a home in the city and has often to visit the country might on the same principle claim damages to his home in the

city, and so there would be no end to such claims, for the injury is common to the whole public, whether in the town or country.''

In *Wellbourn* v. *Davies*, 40 Ark. 83, the court said:

''The inconvenience to the complainant in visiting his patients, however often he may be called to do so, is not different from that which every citizen suffers, whose business or pleasure may call him to travel the road. It is of the same character, only perhaps different in degree, from that which others suffer, who have other business, and live further away. This will not sustain his right of action. . . . The new roads were not as convenient to complainant as the old, and gradually the enclosures of his neighbors came to annoy and embarrassed him very seriously. Doubtless they did diminish the market value of his property. Nevertheless, these were the accidents to him, of a change in the population, business and necessities of the community at large. He made several applications to the County Court to reopen the old roads, and they were all refused. Evidently the public necessity did not require them.''

In *Stoutemeyer* v. *Sharp*, 89 Ark. 175, 116 S. W. 189, the court said:

''In the present case the obstruction did not abut Sharp's premises. It was north of his place, and was between the tracts of land of Stoutemeyer and Parker. Sharp says the obstruction greatly inconvenienced him in taking his stock to Spring River for water and preventing egress and ingress to that part of the country. This was an injury differing only in degree, and not in kind, from that suffered by Parker, Hutchinson and the rest of the community. Assuming the road obstructed to be a public highway, we do not think that Sharp has brought himself within the rule above announced.''

Also, in *Tuggle* v. *Tribble*, 177 Ark. 296, 6 S. W. 2d 312, the court said:

"In this connection it may be said that there can be no change of an existing highway that does not cause some private inconvenience, and, in that sense, injury to the abutting property owners, who have adapted themselves to the existing order of things and have purchased property on a highway which they believed would never be changed. There is no question presented in the record that appellants have been entirely cut off from any public highway by the proposed change in the public road in question."

In *Greer* v. *City of Texarkana,* 201 Ark. 1041, 147 S. W. 2d 1004, it is said:

"Appellant insists that the effect of the changing of highway No. 71 is to destroy the value of his property, which constitutes the taking of his property without compensation. But the case of *Tuggle* v. *Tribble,* 177 Ark. 296, 6 S. W. 2d 312, defines the attitude of this court on such questions. In that case the county court changed the location of a county road near the city of Hot Springs. Tuggle owned land on the old highway, and he appealed from the order of the county court making the change, and he appealed to this court from the judgment of the circuit court affirming the judgment of the county court. It was held on the appeal that the county court had the right to change the road, although the change subjected Tuggle to some inconvenience, and depreciated the value of his property. . . . Appellant has not been deprived of his means of ingress and egress, as Dudley avenue, on which his property is located, remains unaffected by the proposed change. Unaffected also is Jackson street, running into Dudley avenue at appellant's corner. Appellant's damage, as found by the court below, results from the diversion of the traffic; but this was not a recoverable element of damage."

Our conclusion is that the decree of the Chancellor is correct and is therefore affirmed.

The Chief Justice and Mr. Justice MILLWEE not participating.

Mr. Justice McFADDIN dissents.