**CITY OF DOUGLAS, Alaska, a municipal corporation, Plaintiff,**

v.

**DOUGLAS CANNING COMPANY, Inc., a corporation, Defendant.**

No. 7715-A.

United States District Court
D. Alaska,
First Division.
April 24, 1958.

John H. Dimond, of Faulkner, Banfield & Boochever, Juneau, Alaska, for plaintiff.

Joseph A. McLean, Juneau, Alaska, for respondent.

KELLY, District Judge.

The City of Douglas, Alaska, the plaintiff herein, is a municipal corporation of the Territory and as such is the owner of a pile-driven dock with certain structures erected thereon and an approach thereto, situated on tidelands within or adjacent to the corporate boundaries of the City. The approach above referred to is from the adjacent uplands to the dock.

A lease was entered into between the plaintiff and the defendant for a term of 20 years beginning January 1, 1947, with an option to the defendant to renew the lease for an additional 20 year period. The annual rental was established at $50. The leased premises consisted of the dock, the approach to the dock, a warehouse, cannery building and a fish-float thereon or adjacent thereto. The plaintiff reserved for itself, and for the benefit of the public, ingress and egress to the dock and use thereof for the shipment of freight providing said use did not interfere with the cannery operations of the defendant. The lease contained express provisions relating to defaults by defendant and a termination of the lease. These are set forth in the lease as follows:

(a) The failure of lessee to pay any rental.

(b) The failure of lessee to keep or perform any of the terms, covenants and conditions of the lease.

(c) The failure of lessee to pay any taxes due the City of Douglas or the case tax due under the laws of the Territory of Alaska.

(d) The suffering or permitting of defendant of any lien, encumbrance or charge of any nature to be placed on the premises.

The lease further provided that in the event of default on the part of the defendant, the plaintiff had the right to re-enter the premises, take possession thereof, and defendant agreed that it would upon demand quit and surrender possession of the premises to the plaintiff quietly and peaceably and leave the premises in as good condition and repair as when they entered thereon, ordinary wear and tear and damage by the elements excepted. Provisions of the lease which should be set forth more fully herein are as follows:

" * * * Lessee * * * is desirous of leasing the premises * * * for the purpose of conducting thereon and therein a salmon cannery and general fish business."

"It is the intention of the Lessee to operate a salmon cannery and general fish business as the same has been operated thereon for the past thirteen years and the Lessee covenants and agrees to keep the premises leased in good order, repair and condition at all times during the term of this lease. * * * the lessee to use its judgment as to what constitutes good order, repair and condition * * * "

"Lessee will have and maintain on the premises leased certain machinery, appliances, fixtures, etc. necessary for the operation of a salmon cannery and if for any reason the machinery, appliances, property etc., or any considerable portion thereof shall be removed from the City of Douglas without similar machinery, appliances etc., being installed in its place, or, in other words, if the premises are dismantled as a cannery or cease to be used as a cannery and the machinery

transported from the limits of the City of Douglas, then the City of Douglas, the Lessor, may, at its option, cancel this Lease and retake possession of the premises, and in that case the Lessee agrees to quit and surrender possession of the premises to the Lessor in as good order and condition as when entered upon, and to make no further claim for the leased premises."

" * * * and the Lessee agrees (to) pay the cost of driving piling sufficient to properly support the buildings and the equipment therein and sufficient to maintain the dock in a substantial condition * * *"

"It is further mutually agreed that the Lessee shall undertake to carry out the provisions of this Lease in good faith and conduct the salmon cannery and fish business on the premises during the term hereof."

"It is understood and agreed that one of the considerations for the leasing of the premises hereinabove described, in addition to the annual rental to be paid in cash, is to secure to the City of Douglas the salmon canning and fish business as an industry which will furnish some employment to some of its inhabitants, and also to secure to the City the city taxes which may be assessed upon the value of the Lessee's machinery, appliances, and property placed on the leased premises, not including, however, the premises themselves or additions placed thereon for the purpose of carrying out the terms of the lease and carrying on the salmon canning and general fish business, and also to secure to the City the revenue which will accrue to it from the packing of salmon through the regular case tax to be paid the Clerk of the District Court at Juneau and which is refunded under the law to the City; and the Lessee agrees that it will pay all such case taxes as accrue each year on all salmon packed at the rates fixed by law."

"All buildings, permanent improvements and additional structures placed on the leased premises by the Lessee shall at the termination of the Lease become the property of the Lessor, but this shall not include machinery, appliances or fixtures which can be removed without any permanent damage to the structures, and provided further that all such structures, additions, improvements and new construction placed thereon by the Lessee shall be subject to the terms of this Lease without any additional charges to the Lessee."

On June 25, 1957, the plaintiff gave notice in writing to the defendant that it had committed substantial breaches of the lease and that the lease was terminated. The alleged breaches are substantially as follows:

1. One of the most material considerations for the leasing of the premises by the plaintiff to the defendant was that the plaintiff would secure to itself a salmon canning and general fish business as an industry which would furnish employment to inhabitants of the City and taxes to the City; that the defendant has not conducted on the leased premises a salmon canning or fish business for several years and therefore has completely failed to provide any industry which would furnish employment to the inhabitants of the City of Douglas or which would provide adequate tax revenue.

2. That another material provision of the lease requires the company to have and maintain on the leased premises certain machinery, appliances, fixtures and so forth necessary for the operation of a salmon cannery; that about 1951 the defendant permitted the removal of a sufficient amount of machinery from the leased premises so that a salmon cannery could not be operated; that the machinery removed included a filler, cutter, seamer, fish house, conveyor belts, fish ladders and can loft machinery; and that the retorts have not been hooked up for some years.

3. That the defendant has failed to keep the leased premises in good order, repair and condition, and allowed the collapse and destruction of the warehouse in January, 1956, and has failed to rebuild said warehouse; and that the fender piling on the face of the dock has not been kept in repair.

Defendant refused to accede to the demand to surrender the leased premises and this action was instituted to recover possession of the premises. Defendant contends that it has substantially complied with all the terms of the lease; that a fish business in the form of a crab shellfish plant was operated on the premises until the 1957 season; that the provision in the lease that it was the intention of the lessee to operate a salmon cannery and general fish business on the premises is not a covenant restriction; it claims that such a provision authorizing use of the premises for a specified purpose is merely permissive and not restrictive; it further claims that all of the machinery necessary for the operation of a salmon cannery still remains on the premises except the machinery which in the ordinary course of business is leased on an annual basis from the Continental Can Company.

### 1.

At the trial, the evidence showed that the defendant has not operated a salmon cannery on the leased premises since 1948. A sublease was given to Olympic Seafoods, Inc. in July 1951, and they processed crab and shrimp until December, 1953. Following the termination of this sublease, no use was made of the premises by the defendant. In 1956, a sublease was given to Roy Furfiord & Co. who processed crabs on the premises between July and September, 1956. The subleases were agreed to by the plaintiff. Since that time, the defendant has made no use of the premises. The defendant admitted that it had no offers to sublease and that it had no plans to use the premises itself and indicated that this was due to poor fishing conditions and a low market price for canned salmon, and it has likewise been unable to make any effort since this suit was filed on account of the pendency of such litigation.

The defendant claims that the processing of crabs and shrimps is a "general fish business" and that even if it were not that plaintiff's consent to the subleases waived a breach of the lease, if any, as to the conducting of a salmon cannery. It is unnecessary to decide those points. If the failure to conduct a "salmon cannery and general fish business" is a breach, then the defendant has breached the lease in its failure to conduct any business since September, 1956. The question then is whether the lease contains such a covenant and if so what the result of a breach will be.

Reference is here made to the provisions of the lease previously set out in detail. The rent provided in the lease is $50 a year and the lessee also covenants to pay taxes on its equipment and to keep the premises in good repair and it is to use its judgment as to what constitutes good repair. That is the only consideration for the lease of this publicly owned dock, the buildings thereon, and a fish float if there is no covenant that the defendant conduct a salmon cannery and general fish business on the premises.

■ If such is the case, then there is grave doubt as to whether the lease is valid. The premises leased belong to the public and are to be used for the public good and the lease of such premises would be valid only if reasonable in all respects. Le Feber v. Northwestern Heat, Light & Power Co., 1903, 119 Wis. 608, 97 N.W. 203; Griffin v. Oklahoma Natural Gas Corp., 10 Cir., 1930, 37 F.2d 545, 548; Wilmington Parking Authority v. Ranken, Del.1954, 105 A.2d 614, 634; Risser v. City of Little Rock, 1955, 225 Ark. 318, 281 S.W.2d 949, 950–951; McQuillin, Municipal Corporations, 3rd Ed., Vol. 10, Sec. 29.100. To lease the public dock for forty years for the consideration discussed above does not seem reasonable.

However, it is clear from the provisions of the lease that the material con-

sideration for the lease was that a salmon cannery and general fish business would be carried on by the lessee. The lease sets out that the lessee is desirous of carrying on a salmon cannery and general fish business on the premises; that it is its intention to carry on such a business as the same has been operated thereon for the past thirteen years; that if it does not maintain on the premises the machinery necessary for the operation of a salmon cannery or permits a considerable portion to be removed, or permits the premises to be dismantled as a cannery *or cease to be used as a cannery,* and the machinery transported from the City, then the lessor may cancel the lease and retake possession of the premises; that the defendant shall undertake in good faith to carry out the provisions of the lease and conduct the salmon cannery and fish business during the term of the lease; that it is agreed that one of the considerations in addition to the annual rental is to secure to the City the salmon canning and fish business as an industry which will furnish some employment to some of its inhabitants, and will secure to the City taxes on the value of lessee's machinery and will secure the revenue which will accrue to the City from the packing of salmon. It is evident that the primary purpose of the lease was to obtain an operating salmon cannery on the City-owned dock and in the opinion of this Court, the obligation to do so was express and mandatory.

It is true, as a general rule, that a lease of premises for a specified purpose without exclusion of other purposes does not necessarily involve an obligation on the part of the tenant to use it for such purpose or to use it at all. Thompson on Real Property, Sec. 1319. But, it is also true that such an obligation may be implicit throughout the lease without any express provision. 51 C.J. S. Landlord and Tenant § 337a, pp. 1023–1024. Here there is an express provision for cancellation of the lease if the premises cease to be used as a cannery and further the provisions of the lease as a whole constitute no other interpretation.

To constitute an express covenant, no formal, technical, or precise terms are required, but whenever the intent of the parties can be collected out of the instrument, for the doing or not doing of a particular thing, that is sufficient to make an express covenant. Thompson on Real Property, supra.

However, should this Court have considered that there was no express covenant that the lessee conduct a salmon cannery and general fish business on the premises, then the Court should give effect to what the parties really intended, and the lease must be read and considered as a whole in arriving at the intention of the parties. Bovin v. Galitzka, 1929, 250 N.Y. 228, 165 N.E. 273. Further, it is proper to consider the situation of the parties, the subject matter involved, and the object the parties had in view and intended to accomplish. Reilley v. Kroll, 1941, 197 La. 790, 2 So.2d 214; 51 C.J.S. Landlord and Tenant § 337, p. 1026.

It has been held in Roach v. Matanuska Valley Farmers Cooperating Ass'n, D.C.1949, 87 F.Supp. 641, 12 Alaska 512, affirmed 9 Cir., 1951, 188 F.2d 162, that a lease, like every other contract, ought to be construed against the party who drafted it. The evidence in this case was in conflict as to the preparation of the lease. It would appear that the lease was basically one between the City and a previous lessee who leased the dock for a cannery. However, the lease was varied by insertions which were of benefit to the defendant such as the words "general fish business" and "The lessor agrees to allow the lessee to use its judgment as to what constitutes good order, repair and conditions of dock and facilities." In Beck v. F. W. Woolworth Co., D.C.1953, 111 F.Supp. 824, it was held that where the lease had been prepared by the lessee, and the lease had been examined by lessors and the final draft had incorporated requested changes, the rule that the lease will be construed against the party who prepared it was not applicable. The situation is the same here, except that it was

the lessee instead of the lessor who requested changes in the lease so the provisions of the lease cannot fairly be construed against either party. Considering the lease and the law as to interpretation, it is inescapable that the lease was given by the City for the material purpose of having a salmon cannery operating on the premises which would be an asset to the City and was taken by the defendant corporation for the purpose of operating a salmon cannery which would produce a profit for its stockholders, and with the understanding on the part of both parties that should the premises cease to be used as a cannery, then the lessor could terminate the lease.

■■ Courts do not favor forfeitures and it is the general rule that provisions in leases permitting forfeitures are to be strictly construed against the lessor. 51 C.J.S. Landlord and Tenant § 102. However, where the terms of the contract which affect the alleged breach are clear, and call for forfeiture, as in this case, then a forfeiture is unavoidable if the alleged breach does in fact exist. In the case of Urban Properties Corporation v. Benson, 116 F.2d 321, 323, the Court of Appeals for the Ninth Circuit quoted with approval the following:

"The rule that a forfeiture clause is to be strictly construed means simply that no wider scope is to be given to the language employed than is plainly required. It does not require the court to put a strained or over-technical construction upon the language employed, ignoring the essence of the condition imposed * * *. No artificial distinctions are to be taken advantage of or quibbling indulged in to the end that a person plainly and palpably coming within the scope of the forfeiture clause may by 'some hook or crook' escape the penalty of forfeiture."

Most of the cases in which forfeiture has been denied by equity are those that involve breaches for nonpayment of rent. The reason for this is that the provision for forfeiture when the rent has not been paid is generally construed as one intended merely as security for the payment of money. Pomeroy's Equity Jurisprudence, 5th ed., Vol. 2, Sec. 453, p. 290. The situation in the instant case is entirely different, for there has been a breach of the purpose for which the lease was given and such is incapable of pecuniary ascertainment. There can be no just compensation decreed for this breach and that is why the rule as to equitable relief against forfeitures is inapplicable under these circumstances. Peirce v. New York Dock Company, 2 Cir., 1920, 265 F. 148, 156; Pomeroy, supra, pp. 292–293. In the case of Empress Theatre Company v. Horton, 8 Cir., 1920, 266 F. 657, 664, it was stated:

"* * * That, while relief against forfeitures may be granted where, as in failures to pay on time fixed money rents or installments of the purchase price of lands, damages from the breach are certain, and adequate compensation may be made, such relief is never granted where the damages from the breach because of which the forfeiture is incurred cannot be ascertained with reasonable certainty. (Citing cases.) That there is no insuperable objection to the enforcement of a forfeiture by a court of equity, and, when that is more consonant with the principles of right, justice, and morality than to withhold relief, or when there is full, clear, and strict proof of a legal right to a forfeiture, equity follows the law and enforces it. (Citing cases.) * * *."

## 2.

■ There is also the question of a breach of the lease by the removal from the premises of part of the salmon canning machinery. The lease sets forth that the machinery, appliances, fixtures, etc. necessary for the operation of a salmon cannery will be maintained on the premises and if for any reason the machinery, appliances, property etc., or any considerable portion thereof shall be removed, or if the premises are dis-

mantled as a cannery, then the City may cancel the lease.

It is the practice for a considerable portion of the salmon canning machinery to be leased from a can company, and the defendant herein leased such machinery from the Continental Can Company, Inc. According to testimony, the usual business practice is to keep the machinery from year to year and it is not returned to the Can Company unless the cannery closes or different machinery is required. It is not returned at the end of each canning season. The defendant herein returned all such leased machinery to the Can Company. In 1956 an inventory was taken of the cannery equipment and at that time the premises were not "geared up" for the operation of a salmon canning line. Essential equipment for such operation was not contained on the premises, and the boiler, retorts and iron chink, though on the premises, were not hooked up and there was no system of conveyor belts essential to the operation of a one-pound salmon canning line. In other words, defendant does not have the equipment necessary for the operation of a salmon cannery on the premises or within the City of Douglas and has not had for some years. Under this evidence, it is obvious that the certain machinery necessary for the operation of a salmon cannery or a considerable portion thereof has been removed from the leased premises and that such action on the part of the defendant constitutes a breach of the lease.

### 3.

The next alleged breach is as to the provision in regard to maintenance and repairs. The defendant agreed to maintain and repair the premises and to use its own judgment as to what constituted such repairs. It also agreed to drive sufficient piling to maintain the dock in substantial condition. At the time the defendant leased the premises, the dock was in a run-down condition due partially to the fact that native piling had been used to build the dock and it was in need of replacement. Part of the dock rotted away and about one-half of it was rebuilt in 1952 by the Territory of Alaska under the terms of a contract between it and the City of Douglas. The defendant built a new cannery building in 1948 and tore down the old one. This new cannery was blown down in a windstorm and rebuilt by the defendant in 1952 and still stands.

The ten-foot wide approach to the dock fell into disrepair and eventually had to be replaced. The defendant paid the approximate cost of replacing the ten-foot approach and the plaintiff paid an additional sum in order that the new approach would be twenty feet wide. Previous to the time that the new approach was built, a warehouse had fallen into a state of disrepair and collapsed and when the new approach was built a portion of the dock covered by the warehouse was rebuilt as a part of the approach but the warehouse was not replaced. It has been shown that the total square feet in the old cannery buildings and the warehouse was not as great as that in the new cannery building. At the present time, the dock and the cannery building are in a good state of repair except for the fender pilings on the face of the dock which are in need of replacement.

It would seem that there was a breach of the lease when the defendant let part of the dock collapse because pilings were not driven to support the dock, and again when the warehouse fell into the water for the same reason. The City at the time of these occurrences made no complaint. Instead, the City made financial arrangements to have the Territory rebuild part of the dock, they allowed the defendant to tear down the old cannery building and put up a new one and they agreed to join with the defendant in erecting a twenty-foot approach to replace the ten-foot one, which approach would cover part of the area where the warehouse had stood. The City, by these acts, has waived any breach which occurred. As to the fender pilings which need replacement, if the lease were to continue, the defendant would have to pay for the replacement cost of the pil-

ings but it is not such a breach as would end the lease.

In view of the foregoing, the sole and exclusive possession of the leased premises should be restored and delivered to the plaintiff. Judgment and decree in accord with this opinion may be prepared and entered.