J. T. KEMP ET AL v. TOMMY SIMMONS ET AL

5-4581                                    428 S. W. 2d 59

Opinion delivered May 27, 1968

*Charles F. Cole,* for appellants and cross-appellees·

*Ivan Williamson,* for appellees and cross-appellants.

J. FRED JONES, Justice. The city of Mountain View, Arkansas, extended its airport landing strip east across a street known as Kemp Road, and diverted traffic to and from the north end of Kemp Road over a new road constructed west from Kemp Road along the north side of the landing strip. J. T. Kemp, Lloyd Kemp, Don Kemp and Dean Kemp, who owned property on Kemp Road north of the airport, filed a petition in the Stone County Chancery Court against the Mayor and City Council of Mountain View seeking a reinstatement of Kemp Road to its former condition and an injunction against doing anything in the future which would prevent or hinder the petitioners and the general public from having complete and unrestrained access and use of such roadway or street. The Mayor and Council demurred to the petition and the evidence. The chancellor overruled the demurrers and denied the petition. The Kemps have appealed and they rely upon the following points for reversal:

"The Mayor and City Council of Mt. View were without authority to close a portion of the road in question and to erect the barricades thereon.

The chancery court erred in dismissing appellants' petition, and should have granted the relief sought.

Appellants are entitled to the relief requested in their petition."

The Mayor and City Council have cross appealed and they rely on the following points:

"The trial court erred in over-ruling city's demurrer to Kemp's petition.

The trial court erred in over-ruling city's demurrer to Kemp's evidence."

The facts in this case are not seriously in dispute. The appellants are relatives and for many years have owned their separate farm lands northeast and adjacent to the city of Mountain View, which is a city of the second class. A public road which has become known as "Kemp Road," has for many years extended north from state Highway 14 through the Kemp community and has been used by the appellants and others in gaining access to black-topped state Highway 14, which runs east to Batesville and west to Mountain View proper. Kemp Road was originally east of the city of Mountain View, but the city has extended its boundaries east along the north side of Highway 14 by annexation of East Subdivision to Mountain View, and the south end of Kemp Road is now inside the corporate boundaries of Mountain View and has become a street within the city limits of East Subdivision. Another road, known as "Section Line Road," also extends north from Highway 14, and leaves Highway 14 about one-half mile west of Kemp Road and runs more or less parallel with Kemp Road. The city owns and maintains an airport, or landing strip, north of, and adjacent to, East Subdivision, with the landing strip being two hundred feet wide and extending west from Kemp Road for a distance of approximately one-half mile and almost to Section Line Road. The city of Mountain View, in anticipation of outside financial assistance for the purpose of improving its airport and paving the airport runway, and in order to accommodate larger airplanes, extended the airport runway, or landing strip, some distance east, across Kemp Road. The city first constructed a new

road, or street, running from Kemp Road west to Section Line Road along the north side of the landing strip, then by resolution adopted on July 25, 1967, a two hundred foot section of Kemp Road was closed where it was crossed by the extension of the airport runway. That portion of Kemp Road south of the runway was left open from the runway to Highway 14, and that portion of Kemp Road north of the runway was left open with access to state Highway 14 *via* the new road along the north side of the landing strip then south on Section Line Road.

It became necessary for appellants, in traveling from their homes to Highway 14, to travel south to the landing strip, then west approximately one-half mile toward Mountain View to Section Line Road, then south on Section Line Road to Highway 14. For the purpose of travling west on Highway 14 toward Mountain View proper, appellants were required to travel no farther than before the change was made. But for the purpose of traveling east on Highway 14 toward Batesville, it was necessary to make two additional right angle turns and travel about one mile farther than before the change was made. Appellant Lloyd Kemp lives on Kemp Road about one-fourth mile north of Highway 14 and since the change in the access route he is required to travel about three-fourth mile instead of one-fourth mile in reaching the black-topped Highway 14.

By orders of the Mayor of Mountain View, under authority of a resolution adopted by the City Council in July 1967, the two hundred foot section of Kemp Road was torn up and barricades were erected about September 29, 1967. The petition for injunction was filed on October 5, 1967. A general demurrer, alleging "that said complaint does not state facts sufficient to constitute cause of action," was filed to the petition on October 14, 1967. On October 16, 1967, the City Council, in special session, passed an ordinance which in effect, af-

firmed the resolution adopted in July. The case was tried and the decree entered on October 18, 1967.

The appellants, on direct appeal, do not argue procedural invalidity of the legislative process by which a part of Kemp Road was closed except in reply to appellees' argument that the procedure followed by the Mayor and City Council was regular. The thrust of appellants' contention is that the state of Arkansas has never delegated to cities of the second class, authority to close a street under such facts as appear in this case. The appellees contend that cities of the second class do have such authority under the facts of this case and in support of their demurrers, appellees contend that the appellants did not allege, or prove, such special, or peculiar, damages as is necessary for the maintenance of an action for injunctive relief against closing a portion of Kemp Road in this case.

Arkansas Statutes Annotated § 19-3825 (Repl. 1956) authorizes vacation and abandonment of a street *dedicated* by the owner *in a recorded plat where the street has not been used for five years,* and this section clearly does not apply to the facts in this case at bar. Consequently, if the city of Mountain View had the authority to vacate, or close, any portion of Kemp Road, under the facts in this case, such authority must be found in Ark. Stat. Ann. § 19-2305 (Repl. 1956), the pertinent part of which is as follows:

> "In order to better provide for the public welfare, safety, comfort and convenience of their inhabitants, the following enlarged and additional powers are conferred upon cities of the second class, viz:
>
> \* \* \*
>
> Second. To alter or change the width or extension of streets, sidewalks, alleys, avenues, parks, wharves and other public grounds, *and to vacate* or lease out *such portions thereof as may not for the time being be required for corporation purposes,* and where

lands have been or may be acquired or donated to such city for any object or purpose which has become impossible or impracticable, the same may be used or devoted for other proper public or corporate purposes or sold by order of the city council, and the proceeds applied therefor.'' (Emphasis supplied).

Appellant J. T. Kemp testified on direct examination: That he had lived on Kemp Road northeast of Mountain View for twenty-three years and is in the broiler business, that his principal means of ingress and egress for twenty-three years has been over Kemp Road in going to Highway 14 and to Mountain View, that he lives north of the airstrip, that trucks haul feed over Kemp Road to his place, that other people live on the road and everyone is welcome to use it, that Kemp Road has been closed or a barricade has been erected across it, that the city closed Kemp Road and built appellant, and others, a road along the north side of the airstrip. This appellant then was asked the following question and gave the following answer:

"Q. ... How does it affect your getting in and out from your place and these trucks and feed trucks and chicken trucks getting in and out from your place?

A. Well, we have two short turns in it, and we use big trailers; and it's hard to get our chickens out over it, you know; in bad times, they can hardly make the turns.''

On cross-examination this witness testified that from his doorstep to Highway 14 is five tenths of a mile, and that his house is the farthest one north on Kemp Road, that since the new access road has been built all the work has been done on it and his other road has been permitted to go down, that Don Kemp lives south of Highway 14 but has two broiler houses

north of the airport, that besides his own two broiler houses and those of his son, Don, there are three more broiler houses in the area, one belonging to his brother Lloyd and one to John Tingle, that John Tingle lives right on the side of the new access road built along the north side of the airstrip and about midway of it, that his brother, Lloyd, lives north of the airport, that Kemp Road continues north to Herpel Road and is used by himself, his son, and Howard Wade, who raises cattle and hogs, that besides himself and Howard, J. M. Green, who is with the forestry service, also uses Kemp Road out to Harpel Road and also squirrel and deer hunters use it, that his son, Dean, who is employed out of state, has a house beside his own and that his mother lives between his house and his brother, Lloyd, that there are actually four houses on Kemp Road north of the airport, that in going to Mountain View he is required to travel no farther over the new road along the north side of the airport, than he would in traveling south on Kemp Road, but in going to Batesville over Highway 14, it is more than one-half to three fourths of a mile farther since it is only one-half mile to Highway 14 over Kemp Road and one and one-tenth miles *via* the new airstrip road and an additional one-half mile east to where Kemp Road intersects with Highway 14.

Appellant, Lloyd Kemp, testified on direct examination: That he had lived north of the airport on Kemp Road for twenty-two years and that Kemp Road has been in its present location for as long as he can remember and has been used by the general public all this time. This witness was asked the following question and made the following answer:

"Q. Well, this relocation or blocking of the street there, will it damage you in any way, or does it damage you in any way?

A. It sure does.

Q. Just tell the Court in what respect it does.

A. Well, it just puts me out of the way a lot. I am a quarter of a mile from where I live to the blacktop, and I am about three-quarters the other way. We had a good road there; I thought it was good. Now we have to run over gravel that is probably 6 inches deep, creek gravel, and along the airport—up on the airport."

On cross-examination, this witness testified that Kemp Road still runs in front of his place and that he has lost no ingress or egress because of cutting off the road, that the difference in time it takes him to get onto the blacktop of Highway 14 would be the difference in time it would take to travel one-fourth mile, as compared with a mile and one-fourth; that there is one person who lives on Kemp Road between the airport and Highway 14.

Appellant Don Kemp testified on direct examination: That he owns property north of the airstrip but lives south of Highway 14, that he had been acquainted with Kemp Road for twenty-two or twenty-three years, and then the following question was asked him and received the following answer:

"Q. Now, how has the closing of this Kemp Road affected you and your property up there?

A. Well, like Lloyd said, we are traveling a road now that has got 6 inches of gravel on it.

Q. Has it affected the value of the property any?

A. Yes, it has.

Q. In what respect?

A. Well, it put us about a mile out of the way from the real highway."

On cross-examination this witness testified: That in going from his home south of Highway 14 to his proper-

ty north of the airport, he travels no farther now than he would before Kemp Road was closed, but that the road is not as good since it is necessary to travel farther on gravel.

Howard Wade testified on direct examination: That his brother sold the land to the Kemps and that he is thoroughly familiar with Kemp Road, that the road has been in its present location for 50 years and has been used by the general public during that time.

On cross-examination this witness testified: That he had used the north end of Kemp Road from Herpel Road in hunting cattle and such as that; that a portion of Kemp Road in that area runs through his land and that he does not believe that the county would attempt to work the road without saying something to him about it.

The testimony offered by appellees had to do with the need for the airport runway extension, the purchase of property for that purpose, and the adoption of the resolution and passage of the ordinance in connection with closing the two hundred foot strip of Kemp Road, and that testimony is not important to the issues on this appeal.

Appellants rely on the decisions of this court in *Texarkana* v. *Leach,* 66 Ark. 40, 48 S. W. 807, and *Brooksher* v. *Jones,* 238 Ark. 1005, 386 S. W. 2d 253. The facts in both of these cases readily distinguish them from the case at bar. In the *Leach* case the steeet was being abandoned across a series of railroad tracks in favor of a crossing to be provided by the railroad company across fewer tracks. Apparently the proposed abandonment left appellant's, and neighboring property, on the dead end of the street against the railroad. In any event, it clearly appeared that appellant's property would have been reduced by at least twenty-five to fifty per cent in value by the abandonment. It is true that this court held in the *Leach* case that the city did

not have the authority to close the street in these words:

> "Texarkana being a city of the second class, the ordinance of its city council is void. The municipal authorities of a city or town cannot vacate a street or any part of it without the authority of the legislature. This power does not inhere in a municipality.
>
> * * * The statutes of this state authorize municipal corporations to lay off, open, widen, straighten, establish and improve streets, and keep them in. repair, but they do not expressly, impliedly, or incidentally confer upon cities of the second class or incorporated towns authority to vacate streets."

As pointed out by the appellants, Ark. Stat. Ann. § 19-2305 was enacted by the legislature about the time of the decision in the *Leach* case. As a matter of fact, Act No. 24 of 1897 (Ark. Stat. Ann. § 19-2305) was approved on June 5, 1897, and the *Leach* case was decided December 17, 1898. The court, however, did not mention Act No. 24 of 1897 in the decision, but as pointed out in appellants' brief, this act does "grant to a city of the second class the authority to: 'alter or change the width or extension of streets, sidewalks, * * * and to *vacate* or lease out such portions thereof as may not for the time being *be required for corporate purposes.*'" (Emphasis on "vacate" supplied).

In the *Brooksher* case, supra, Birnie Avenue in Fort Smith had been dedicated to the public as a city street since 1906 and was being used daily by more than two hundred automobiles, when the city of Fort Smith attempted to abandon a portion of it to Safeway Stores, Incorporated. This court, in effect, simply held that the proof in the *Brooksher* case failed to show that the portion of Birnie Avenue sought to be vacated was not required for corporate purposes.

The Brooksher decision did not reject the decision in the case of *Risser* v. *City of Little Rock*, 225 Ark. 318.

281 S. W. 2d 949, except to state that the points decided in the *Risser* case were not decisive of the points raised in the *Brooksher* case.

Appellees rely heavily on our decision in the *Risser* case, supra. In that case the facts were very similar to the facts here. In order to expand its airport, the city of Little Rock made two efforts to close portions of East Tenth and East 26th Streets leading from the city of Little Rock to the very populous Fourche Dam Pike area. The first ordinance was enacted in accordance with Ark. Stat. Ann. § 19-3825 (Repl. 1956) authorizing the closing of streets where they have not been used for five years. This ordinance was declared void by the trial court and no appeal was perfected. The city council then enacted an ordinance abandoning a portion of these streets on authority of Ark. Stat. Ann. § 19-2304 (Repl. 1956) (which relates to cities of the first class and is the same as Ark. Stat. Ann. § 19-2305, supra, relating to cities of the second class). An injunction was sought to enjoin the city from abandoning the old routes in favor of the new ones. The contention among others being "the city had no control or jurisdiction to close the road in question." In affirming the trial court in denying the injunction, this court touched lightly on the authority of the city, but did consider at some length whether or not the appellant petitioners had suffered special and peculiar damages. As to the authority of the city, this court said: "Cities have the authority to control, supervise and regulate all streets within corporate limits, Ark. Stat. Ann. § 19-2313, § 19-2304." As to special damages in the *Risser* case, this court said:

"Next we come to the question of whether the appellants suffered special and peculiar damages. None of the plaintiffs own property abutting the portions of the streets being closed, but even if it is conceded that appellants have been damaged by the relocation of the roads, they have suffered no peculiar or special damages which could give rise

to a cause of action. Travelers on 10th Street, as relocated, must turn two corners and travel a little farther, which requires less than a minute in additional time. This slight inconvenience, however, is not peculiar to appellants alone. This street is an outlet from the city to one of the most thickly populated sections of the county. Every person that travels the street suffers the same inconvenience as the appellants.''

The Risser decision then quotes with approval from *Little Rock and Hot Springs Western Railroad* v. *Newman*, 73 Ark. 1, 83 S. W. 653, where this court said:

' "The rule of law governing cases of this kind is that no private action on account of an act obstructing a public and common right will lie for damages of the same kind as those sustained by the general public, even though the inconvenience and injury to the plaintiff be greater in degree than to other members of the public; but an action will lie for peculiar or special damage of a kind different from that suffered by the general public, even though such damage be small, or though it be not confined to plaintiff, but be suffered by many others.' "

Now in the case at bar, none of the appellants were abutting land owners to the closed portion of Kemp Road. Besides deer and squirrel hunters, only five people were shown to have used Kemp Road, and only three of them regularly used that portion that had been closed, as compared with two hundred who daily used Birnie Avenue in the *Brooksher* case and the inhabitants of the most thickly populated area in Pulaski County in the *Risser* case. The appellants here, as in the *Risser* case, have only shown inconvenience in traveling a little farther with two additional turns in the road and have shown no special and peculiar damages not common to anyone else who might have occasion to travel Kemp Road.

Appellant questions the validity of the ordinance closing a part of Kemp Road because the ordinance was not published pursuant to law (Ark. Stat. Ann. § 19-2404 [Repl. 1956]). The ordinance was passed with an emergency clause on October 16, 1967, two days prior to the trial; it was adopted by unanimous vote on suspension of the rules, and the emergency clause was voted on separately. Therefore, the ordinance was effective upon adoption under the provisions of Amendment No. 7 of the state constitution, and it was not likely that it could have been published before the trial. We do not imply that the adoption of an emergency clause dispenses with the necessity for publication, but the effectiveness of an emergency ordinance not providing for fine, penalty, or forfeiture should not be suspended until publication, at least if it is published within a reasonable time.

The question of when a street, or any part of a street, is no longer required for corporation purposes is a question of fact to be determined by the city council in the first instance, and then by the chancellor when the validity of the council's action is attacked in chancery court. Chancery cases are tried *de novo* in this court and the chancellor's decision is sustained unless it is against the preponderance of the evidence.

We conclude, therefore, that the two hundred foot section of Kemp Road, closed by the city of Mountain View, is not, for the time being, required for corporation purposes, and that under authority of Ark. Stat. Ann. § 19-2305, and § 19-2313, the city had authority to abandon and close that section of Kemp Road and to lay off, open and maintain, the new substitute road along the north side of the airport strip.

In the *Brooksher* case, supra, the opinion was concluded as follows:

"We make it plain that we are not holding a city has no right under any factual situation to vacate

a street under § 19-2304, but we are merely holding that the Commission had no such right in this instance under the undisputed facts as shown by the record."

We also make it plain, in the case at bar, that we are not holding that a city *does* have a right under just any factual situation, to vacate a street under § 19-2305, but we are merely holding that the City Council had such right in this instance under the facts as shown by the record in this case. In the absence of future legislation on the subject, each case arising in the future must continue to rest on its own peculiar facts. The decree of the chancellor is affirmed.

Affirmed.