FREDERICK CURTIS ET AL., APPELLANTS, V. JOHN C.
ALLEN ET AL., APPELLEES.

FILED JANUARY 2, 1895.    No. 7417.

1. **Educational Institutions.**    The institution for the blind at
Nebraska City is one for "educational purposes," within the
meaning of section 19, article 5, of the constitution of this state.

2. ———: ARE NOT ASYLUMS.    The mere fact that persons are
blind, poor, and indigent does not entitle them to any privilege
in the aforesaid institution for the blind, except to receive an
education, and incidentally such aid and support as thereby shall
be rendered necessary.

APPEAL from the district court of Otoe county.    Heard
below before CHAPMAN, J.

*W. M. Clary*, for appellants.

*Geo. H. Hastings*, contra.

RYAN, C.

This is an appeal from the district court of Otoe county.
The appellants, by their petition in the said court, alleged

Curtis v. Allen.

that the action was brought on behalf of themselves and
all others similarly situated who should come in as plaintiffs
and contribute to the expense of this litigation; that each of
said plaintiffs was, at the time of bringing this action, a resi-
dent and citizen of Nebraska, of suitable age and capacity;
that by reason of being blind, plaintiffs had been admitted
into the Nebraska institution for the blind, a charitable in-
stitution of this state, situate at Nebraska City; that
plaintiffs had been inmates and students of said institution
for more than two years before the filing of said petition;
that each of plaintiffs was then poor and indigent; that
William Ebright, one of the defendants, was then princi-
pal and superintendent of said institution, and as such
principal was in the control and management thereof, sub-
ject only to the orders of the board of public lands and
buildings of said state.    Following the above averments
there were others that the defendants, aside from Mr.
Ebright, were members of and constituted the board of
public lands and buildings just referred to, and that to said
board was entrusted the general supervision and control of
all the buildings, grounds, and lands of the state, the state
prison, asylums, and all other institutions thereof, except
those for educational purposes.    It was further alleged
that the said board, together with the defendant William
Ebright, had control over, and were entrusted with, the
government of said Nebraska institution for the blind, and
that said Ebright and said board had made the rules and
regulations for the admission, government, control, and
education of the inmates or pupils thereof and had fixed,
or assumed to fix, a term of the length of the course of
studies to be pursued therein by plaintiffs and other inmates
of said institution by reason of being unable to acquire an
education in the common schools of the state.    The right
of the plaintiffs to the relief prayed, which was that the
defendant should be perpetually enjoined from interfering
with plaintiffs' right to remain inmates forever of said in-

stitution at the expense of the state, was claimed in the following language used in the petition: "And these plaintiffs further allege that by reason of their infirmity they are by law entitled to be and remain in the said institution for the blind at Nebraska City aforesaid, and to be supported, cared for, and educated at the expense of the state of Nebraska; that they are in truth and in fact the wards of the state and have the right to remain there at all times so long as they are guilty of no infraction of the rules and regulations of said institution enacted for the good government of the same." By the petition it was made to appear that the reason that the plaintiffs were denied the privilege of remaining in said institution was that its management insisted that it was an educational institution, and that the summer school vacation was about to commence, during which plaintiffs were required to care for and maintain themselves, although, as plaintiffs made known, they had no home or place of abode. It is not deemed necessary to set out the averments of the answer, for the sole question for our consideration is apparent from the averments of the petition. There was a decree denying the relief prayed, from which plaintiffs have appealed.

Lest we should be misunderstood it is proper at this juncture to state that we recognize the difficulties which might surround this case under certain conditions. Mr. Ebright's authority is alleged to have been derived from that of the board of public lands and buildings. The rules and regulations of the institution under consideration depend for their validity upon the powers possessed by Mr. Ebright and the board which appointed him. If the petition had been framed on the theory that neither the board of public lands and buildings nor its appointee had authority to adopt rules and regulations for the government of the institution for the blind, and that its management was not subject to their control, questions would have been presented which by the allegations and admissions of ap-

pellants in their petition are herein certainly rendered im-
material,—probably, in any event, the powers of *de facto*
officers could not be questioned in a collateral proceeding.
Whatever shall be said in the further discussion of this
case must be understood as in view of the condition of the
issues tendered by appellants and not as an independent
recognition of the authority of the board of public lands
and buildings or its appointees with reference to the man-
agement of this institution.

In the case of *State v. Bacon*, 6 Neb., 286, the main
question which now confronts us was stated as the second
essential proposition to be determined under the pleadings
and the evidence in this language: "Does the institution
for the education of blind persons come within the exception
of section 19, article 5, of the constitution?" The essential
facts stated in the case just cited were that under the pro-
visions of the act whereby was established the *institution*
with which we have now to deal the board of public lands
and buildings assumed control and had removed the re-
spondent from his position as principal of said institution.
By *mandamus* this board, as relator, sought to compel de-
fendant, the deposed principal, to deliver up the books,
records, furniture, and papers in his possession belonging
to said institution. The first question involved, as stated
in the opinion delivered by GANTT, J., was this: "Has
the state board of public lands and buildings the power to
appoint and remove officers of state institutions properly
under their supervision and control?" There was a con-
currence of all the judges of this court in denying the right to
remove, and this was a negative of such a right of removal,
even by officers properly under the supervision and control
of said board. From this predicate the denial of the writ of
*mandamus* prayed necessarily followed, and, therefore, there
existed no need for the discussion of the second proposition.
It was nevertheless discussed, GANTT, J., maintaining the
affirmative and MAXWELL, J., and LAKE, C. J., sustaining

the negative. The opinion of LAKE, C. J., opens, however, with this apologetic statement, to-wit: "I was absent during the argument of the respective counsel, and, therefore, am not in possession of the points on which they severally relied, and but for the disagreement of my brother judges on one of the principal questions would have remained silent." It is proper further to note that no brief was submitted. At least none appears now on file. Under these circumstances we are now called upon to consider the question as to which there has already been filed conflicting opinions. What weight should have been accorded the opinions of LAKE, C. J., and MAXWELL, J., respectively, as to a proposition perhaps not necessary to the determination of the case then under consideration need not now be stated. It is proper, however, to note that practically their views have been acted upon as authoritatively defining the *status* of this institution, at least so far as to place its management under the control of the state board of public lands and buildings, as " an institution for the protection and relief of unfortunates." The language just quoted is Judge LAKE's definition of an asylum. Within this class the opinion of Chief Justice LAKE and that of Judge MAXWELL place the institution for the blind. As a logical sequence of this classification and the definition of an asylum given in connection therewith, plaintiffs insist that as wards of this state they are entitled in all respects to be cared for in this institution during the terms of their natural lives. Was such a result within the contemplation of the legislature when the institution was created is the question with which we have now to deal.

In the act creating this institution there was no reference by name to an asylum, the designation is always an institution. It therefore would seem that there was attached to the word "asylum" too much importance in all the opinions filed in *State v. Bacon, supra.* It is true that in the act approved February 13, 1877 (Session Laws, 1877,

p. 188), there is mention of an asylum for the blind, but so there is of an asylum for the deaf and dumb, an institution provided for by an act approved February 23, 1875 (Session Laws, 1875, p. 146), its purpose being defined as follows:

"Sec. 8. The object of said institution shall be to promote the intellectual, physical, and moral culture of the deaf and dumb by a judicious and well adapted course of instruction, that they may be reclaimed from their lonely and cheerless condition, restored to society, and fitted for the discharge of the duties of life."

This institution, whose object is thus defined with respect to the deaf and dumb of Nebraska, might perhaps be considered as falling within the fourth definition of the word "asylum" as given in the Century Dictionary, to-wit: "An institution for receiving, maintaining, and, so far as possible, ameliorating the condition of persons suffering from bodily defects, mental maladies, or other misfortunes, as an asylum for the blind, for the deaf and dumb, for the insane, etc., a Magdalen asylum." These considerations illustrate the danger of attempting to define the *status* of an institution by resort only to a term by which it at times has been loosely designated.

In the opinions filed in *State v. Bacon, supra,* the word "asylum" was applied to the institution for the blind, notwithstanding the fact that by the legislature no such descriptive term had been used in the act which provided for its creation and maintenance. By the act approved February 13, 1877, the legislature in its enumeration of the subjects of the powers and duties of the board of public lands and buildings included the asylum for the deaf and dumb and grounds, and the asylum for the blind and grounds. This court in *Re Board of Public Lands and Buildings,* 18 Neb., 340, held that the board just referred to had no power under said act to appoint or remove officers of state institutions, that power, by the adoption of

the constitution, having been devolved upon the governor, and, therefore, it would seem that the word "asylum," as used in the act of 1877, applies simply to a building in each instance of its use. If the scope of the holding in *Re Board of Public Lands and Buildings* is correctly apprehended, it would seem to render of little force the arguments advanced in the opinions filed in *State v. Bacon* as to the second proposition therein discussed, for if, in any event, the supervisory control of the board could extend only to buildings and grounds, that is, to real property, it was immaterial what might be said as to the management of the institution in any other such respect as the removal of the principal of that institution and the recovery from his possession of its personal property. In our view, the sole question is whether or not the institution for the blind at Nebraska City is an educational institution within the purview of section 19, article 5, of the constitution. In the opinion of GANTT, J., filed in *State v. Bacon, supra*, attention was called to the fact that by the act creating the institution for the blind of this state provision was made for a principal, whose duty it was to report to the governor, prior to each session of the legislature, the number of pupils, their names, ages, sexes, as well as the studies and trades taught. He also challenged attention to the fact that by said act teachers were provided for, and that by section 17 thereof it was provided that "all blind persons within the state, of suitable age and capacity, shall be entitled to an education in this institution at the expense of the state," and furthermore, that "each county superintendent of common schools shall report to the principal of the institution for the blind, on the first day of April of each year the name, age, residence, and post-office address of every blind person and every person blind to such an extent as to be unable to acquire an education" (Session Laws, 1875, p. 153) in his county. It was also noted by Judge GANTT that the act appropri-

ated two thousand dollars annually, or so much thereof as might be necessary, to meet the ordinary expenses of the institution, and that the current expenses should be drawn by warrants upon the temporary school fund of the state. The argument made upon consideration of these provisions and the analogies of other statutory provisions was, it seems to us, very convincing. There are other provisions made by statute which tend to fortify Judge GANTT'S argument. Section 14, subdivision 7, chapter 79, Compiled Statutes, provides that "the county superintendent shall report on or before the first Tuesday in September of each year to the superintendent of the blind asylum the name, age, residence, and post-office address of every person blind to such an extent as to be unable to acquire an education in the common schools and who resides in the county in which he is superintendent, and also to the superintendent of the Nebraska institute for the deaf and dumb the name, age, and post-office address of every deaf and dumb person between the ages of five and twenty-one years who resides within his county, including all such persons as may be deaf to such an extent as to be unable to acquire an education in the common schools." These provisions as to the institution for the blind and for that of the deaf and dumb are much the same, whereby is evidenced a recognition of the fact that one is as much educational as the other. By section 17 of the act of 1875 creating the institution for the blind it was provided that all blind persons resident of this state, of suitable age and capacity, shall be entitled to an education at the expense of the state. (Session Laws, 1875, p. 153.) There was no requirement that there should be repayment to the state of any expenses, whatever might be the financial condition of pupils, except those incurred in the purchase of necessary clothing. In the case at bar the right of appellants to be supported in the institution for the blind for all time was based upon the allegations that appellants were blind, poor, and indigent. By section 1,

chapter 67, Compiled Statutes, provision is made for the support of every person "unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy, or other unavoidable cause." In the first instance the duty of support is devolved upon the relatives of the pauper. If their circumstances are such that they cannot furnish such support the county assumes that liability. As the appellants have shown that they are blind, poor, and without means of subsistence, they are entitled to support in their respective counties out of the poor fund raised for that purpose. The authorities of the state could not divert its temporary school fund to the establishment and maintenance of a poorhouse even if they so desired. It is quite clear that they have made no such attempt, but that the institution for the blind is educational in its purpose, the provision for shelter and board of the pupils while under instruction being merely a necessary incident. The judgment of the district court is

AFFIRMED.