### Shaw *v.* Conway.

Opinion delivered March 25, 1929.

*Terry & Morrow,* for appellant.

*George F. Hartje,* for appellee.

MEHAFFY, J. The appellant filed suit in the Faulkner Chancery Court, stating that he was a master plumber engaged in the general plumbing business in the city of Little Rock, Arkansas, under the firm style and name of Shaw Gas & Plumbing Company; that he is an experienced plumber, and employs experienced and high-class men, and, in compliance with the laws of the State of Arkansas, city of Little Rock, paid privilege tax for 1928, and obtained license from the city of Little Rock, which gave him a right to maintain an office in said city, to do a general plumbing business during the year. That he obtained a contract from the city of Conway, and that the city of Conway, through its mayor, demanded a privilege tax or license fee of $25 before permitting him to do the work; and they informed Shaw that he or any of his men proceeding to do the work without paying the $25 would be arrested under the city ordinance.

Neither party sets out the ordinance in the abstract, but they set out certain portions of it, showing that the ordinance requires that all persons, firms or corporations engaged in the plumbing business shall first pay to the city collector a license fee of $25 per annum, payable the first day of each year, and that any person or corporation failing or refusing to comply with the requirements of the ordinance shall be deemed guilty of a misdemeanor, and, upon conviction, fined in any sum not less than $5 nor more than $25.

It is alleged in the complaint that the ordinance is arbitrary, unworkable, contrary to and conflicting with the laws of the State of Arkansas; that the city of Conway is without authority and power to pass said law, which is unenforceable and without effect, and restricts the right to engage in the occupation of plumbing, and is not an ordinance for the protection of the health and welfare of the city; was passed with the idea and expectation of obtaining revenue, not for the benefit and protection of the city; that the ordinance does not provide for a board of inspectors or public health officers. It is also alleged that the examination and inspection are not to regulate plumbing in any way for the health and benefit of the city, but for restraint of an occupation, and does not protect the public health; that Shaw does not maintain an office in the city of Conway, and is not attempting to open one; that he has no remedy at law, and asks that the mayor and the city of Conway be enjoined from hindering him with his work.

The response to the petition alleged that Conway was a city of more than 6,000 people dependent upon the water and sewer systems, and that it was necessary to regulate and supervise the installation of plumbing in the city; that it had an inspector to supervise same, whom it paid $125 per month, and that the ordinance complained of was passed for the purpose of regulating the installation of plumbing, and, for the purpose of assisting and defraying the expenses and superintending the same, a fee of $25 per annum was charged.

The testimony of Replogle showed that he had worked at his trade practically all his life; was a master plumber, and that he did the work for Shaw in Conway on two jobs; maintained no office in Conway; that Shaw paid a license or privilege tax in Little Rock, and that the city of Conway refused to give him a permit until he had paid the $25 license fee to operate in Conway. They did not require an examination; did not try to ascertain whether he was qualified or to find out what his experience was, but simply told him he would have to pay the $25.

The mayor of Conway testified that the ordinance was passed for the regulation of plumbing; that Conway has no occupation tax; that there are four plumbers in the city, but the city does not attempt to say who shall engage in plumbing business. The plumbing inspector inspected all plumbing before it was covered up. Conway had no city board of health. The inspector was not a plumber, and there was no board to examine plumbers in Conway. The inspector was paid a salary of $125 a month.

Jones, the inspector, testified that his previous occupation was carpenter; that he had been working around buildings about twenty years; took special training in Little Rock under the State Board of Health; that there were five plumbers in Conway; some months their inspection fees and licenses paid his salary; he inspected all plumbing done in Conway; made three trips. He was sanitary inspector, but had no connection with the board of health. There was no board of examiners for plumbing.

The clerk and recorder testified that he issued licenses, but did not attempt in any way to ascertain the ability of applicant as to his knowledge of plumbing. The city has no board to examine applicants.

Mr. Replogle, in rebuttal, testified that he knew sanitary plumbing; knew when it was put in whether it was sanitary or not; takes years of experience to know

sanitary plumbing; requires four years to become journeyman plumber, and would take more study of plumbing and heating, and he should take an examination and belong to the master plumbers of the State to be a master plumber.

The appellant's first contention is that the city of Conway did not have the right to charge the $25 fee or tax; that, since Shaw paid his privilege tax in the city of Little Rock, and was not attempting to open an office in Conway, the city of Conway had no right to demand the $25 fee; and, among other things, relies on § 7618 of Crawford & Moses' Digest, which reads as follows:

"Provided, no person, firm, individual or corporation shall pay a license fee or tax mentioned in this act in more than one city in this State, unless such person, firm, individual or corporation maintains a place of business in more than one city, and the license charged and collected shall be for the privilege of doing business or carrying on a trade, profession, vocation or calling in the city where such trade, profession, vocation or calling is situated."

It is therefore contended by appellant that, since he paid the tax in Little Rock, he was not required to pay it in any other city. And it is also contended that the ordinance of the city of Conway was in conflict with and contrary to act 166 of the Acts of Arkansas of 1925, and was therefore void; and for that reason the city of Conway had no authority to demand an inspection fee of $25.

Act 166 of the Acts of 1925, which appellant contends makes the city ordinance of Conway invalid, is an act to secure the registration of plumbers and the supervision and inspection of plumbing and drainage in cities having a system of sanitary sewerage. It provides, among other things, that, in every city having a system of sanitary sewerage, a board of examiners shall be appointed consisting of four members, two of whom shall be master plumbers and two journeymen, and that there shall be added to the board of health of every city not having a

board of examiners as herein provided, four members, all of whom shall be plumbers, two of whom shall be master plumbers and two journeymen plumbers. It also provides for an examination of every applicant by the board, to ascertain his competency or fitness, and also provides for the appointment by the mayor of one chief plumbing inspector. Section 1 of the act provides that hereafter any person engaged in or working at the business of plumbing in a city having a system of sanitary sewerage, either as a journeyman or master plumber, or any person installing or placing any plumbing fixtures or materials, shall first receive a certificate in accordance with the provisions of the act. The act provides that the examination shall be of such a character as to thoroughly test the applicant's ability or knowledge of the plumbing trade.

There is no ordinance of the city of Conway requiring any examination at all; there is no privilege tax; no requirement that any person shall pay a tax or license fee for engaging in the trade; but the ordinance of the city of Conway simply provides for inspection of all plumbing work done in the city, and provides for a fee of $25 from each person who engages in the trade in the city, for the purpose of paying the expenses of inspection. It is not in conflict with act 166, above referred to, and the ordinance does not require the person who works at the trade in Conway to pass any examination or have any knowledge of plumbing, but it is purely a regulation and requirement for inspecting the work done by any plumber in Conway.

"As the business of plumbing is so intimately connected with the public health, especially in the crowded urban centers, where scarlet fever, typhoid fever, diphtheria, and kindred diseases, may become epidemic, the sound view is that such occupation is obviously a proper subject of reasonable police regulation." McQuillin on Municipal Corporations, 2d ed., § 1117.

Section 7494 of Crawford & Moses' Digest, among other things, provides, in speaking of the power of the

city to make and publish ordinances: "They shall have power to make and publish such by-laws and ordinances, not inconsistent with the laws of this State, as to them shall seem necessary to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of such corporations and the inhabitants thereof."

It is not disputed that plumbing is a proper subject of reasonable police regulation, but it is contended that, if one has license to follow the trade of plumbing in the city of Little Rock, he can do work in any other city in the State of Arkansas without being required to pay any fee for the inspection of the work.

Section 7684 of Crawford & Moses' Digest provides, among other things, that the city shall have power to prevent or regulate the carrying on of any trade, business or vocation of a tendency dangerous to morals, health or safety, or calculated to promote dishonesty or crime.

Of course, a city in Arkansas could not pass any ordinance unless the law authorized it to do so. There is ample authority, however, in the law authorizing cities in Arkansas to pass laws requiring inspection of plumbing, and they may charge a fee to any person who follows the trade of plumbing, or does any work of that character in any city, to help pay the expenses of inspection. The uncontradicted proof in this case shows that the purpose of the ordinance is to inspect all plumbing done in the city for the protection of the inhabitants of the city, and not for the purpose of revenue. The city could not pass an ordinance like this for the purpose of raising revenue.

This court has said: "The amount the city council has a right to demand for a license fee depends upon the extent and expense of supervision made necessary by the business in the city or town where it is licensed. A fee sufficient to cover the expenses of issuing the license and to pay the expenses which may be incurred in the enforcement of such police and sanitary inspections as

may be lawfully exercised over the business, may be required. The amount necessary to meet all expenses cannot in all cases be ascertained in advance, and expenses reasonably anticipated may be included. In fixing the fee the city may take notice of local conditions and the extent and character of police regulation required." *Newport* v. *Young,* 173 Ark. 785, 293 S. W. 711; *Fayetteville* v. *Carter,* 52 Ark. 301, 12 S. W. 573, 6 L. R. A. 509; *Texarkana* v. *Hudgins Produce Co.,* 112 Ark. 164, 164 S. W. 736; *Kirby* v. *Paragould,* 159 Ark. 29, 251 S. W. 374; *North Little Rock* v. *Kirk,* 173 Ark. 554, 292 S. W. 993.

This court has also said: "In exercising the power conferred upon it under the general welfare clause of the statute, the city council has broad discretion to determine what is necessary for the public welfare, safety, comfort and convenience of the inhabitants of the city. The city council likewise has a similar discretion in determining what character of structure may be erected and maintained upon, over, or under the streets, alleys and sidewalks of the city, so long as such structure does not constitute *per se.* a common nuisance. * * * And, unless such discretion was exercised in an arbitrary, discriminatory and unreasonable manner, or in such manner as to invade the constitutional rights of property, the court will not interfere and declare the ordinance void." *Sander* v. *Blytheville,* 164 Ark. 434, 262 S. W. 23.

The city of Conway not only has more than 6,000 population, but it has three colleges, with approximately 2,000 students, and there can be no question about the necessity for supervising and inspecting the plumbing work done in such a city.

As stated in McQuillin on Municipal Corporations, plumbing is intimately connected with the public health, and especially in crowded centers, or schools or colleges like they have in Conway, the inspection of the plumbing, in order to protect the health of the inhabitants, is im-

portant, and certainly a proper subject of police regulation.

The ordinance of the city of Conway is a valid ordinance, and not in conflict either with the statute referred to or the Constitution. And, under the statutes of Arkansas, the city was authorized to pass the ordinance in question.

The decree of the chancellor is affirmed.