CITY OF LITTLE ROCK, ET AL v. T. H. LINN, ET AL

5-4660                                   432 S.W. 2d 455

Opinion Delivered September 30, 1968
[Rehearing denied November 4, 1968.]

*Thomas J. Bonner* for appellant (Fletcher).

*Joseph C. Kemp* and *Perry V. Whitmore* for other appellants.

*H. B. Stubblefield* for appellees.

John A. Fogleman, Justice.    The City of Little Rock and the Bishop of the Catholic Diocese of Little Rock have appealed from the decree of the Chancery Court of Pulaski County voiding that portion of Ordinance #11944 which vacates "I" Street between Harrison and Tyler Streets in Little Rock.    Appellees, who attack this ordinance and another [#11604] vacating Tyler Street between "H" and "I" Streets, have also appealed.    Their appeal is from the same decree insofar as it pertains to Ordinance #11604 and to the vacation of parts of the alley in Blocks 9 and 16 of Hollenberg's Addition.

Block 16 is bounded on the west by the portion of Tyler Street vacated by Ordinance #11604 adopted June 7, 1965.    Block 16 lies on the south side and block 9 on the north side of that portion of "I" Street which Ordinance #11944 proposed to vacate.    The alley runs north and south and bisects these blocks.    Title to all of block 15 and all of those portions of block 16 and block 9 abutting the portions of the alley and "I" Street which would be closed is vested in Albert L. Fletcher as Bishop of the Catholic Diocese of Little Rock.

Appellees are citizens, residents, taxpayers and owners of real property in the city.    Their real property is in the vicinity of the streets and alleys sought to be closed.    Only one of them owns any property in the same block with any portion of the public ways affected. He is the owner of a lot bordering a portion of the alley which would not be closed.    They originated this action on behalf of themselves and other persons similarly situated.    Their complaint was filed August 30, 1967. They contend that both ordinances are void for want of authority in the Board of Directors in the city and because the findings made by the Board were untrue, arbitrary and unreasonable.    They claim a vested right to the continued use of these public ways.

Among other defenses, appellants pleaded the bar of the statute of limitation set out in Ark. Stat. Ann. § 19-3829 (Repl. 1956) as to Tyler Street.

After hearing the evidence, the chancellor rendered an opinion. In that opinion he held that the attack by appellees on the closing of Tyler Street was barred by the statute of limitation pleaded by appellants. We agree with the trial court on this finding.

Bishop Fletcher filed a petition for the closing of Tyler Street between blocks 15 and 16. The ordinance recites the giving of notice as required by law and the hearing of all persons desiring to be heard. It includes a finding that the petitioner was an educational institution operating Holy Souls Elementary School on both sides of the portion of the street to be closed. It also recites: That the petitioner, as owner of all property abutting on this portion of the street, had filed written consent to vacation of the street; that the portion of the street to be closed is not required for public purposes and that the public interest and welfare will be benefited by abandonment thereof. The ordinance expressly vacated and abandoned all rights of the city and the public generally in that portion of Tyler Street. The determination and findings of the council are conclusive unless suit to reject the ordinance is brought within thirty days after its passage. Ark. Stat. Ann. § 19-3829. Since no suit was brought, the action instituted by appellees attacking this ordinance is barred.

A petition for closing the block of "I" Street between Harrison and Tyler Streets and 130 feet of the alley lying immediately north of this portion of "I" Street and the 200 feet thereof lying immediately south of "I" Street was also filed by Bishop Fletcher and certain owners of real property in the City of Little Rock. This petition was filed under the provisions of Ark. Stat. Ann. § 19-3818, § 19-2304 and § 19-3825. The petitioners alleged that the land embraced within the alleys to be closed was needed for the purpose of con-

struction of new church buildings for Holy Souls Catholic Church, and was not needed for corporate purposes because modern municipal planning eliminates alleys in residential areas. They allege that the portion of the alleys which will remain will give sufficient access to public streets. They also stated that the portion of "I" Street in question was not required for corporate purposes of the city and that there are sufficient other streets in the neighborhood to carry the traffic volume. The petition relates that Bishop Fletcher holds title as a corporation sole and, as such, is an educational institution, operating places of academic and religious education.

The schools are presently located on blocks 15 and 16, south of "I" Street. The Holy Souls Catholic Church is located on this same property. It is alleged that the space in the existing buildings is inadequate and facilities are to be expanded on blocks 15 and 16. This expansion would include living quarters for the principal and some of the teachers of the school, parking facilities for teachers and patrons, a new church building, a new gymnasium, cafeteria and auditorium, all of which would be used jointly by the school and the church. This ordinance recites these, among other, findings by the Board of Directors:

"e. There are sufficient other East/West streets in the vicinity of the street to be closed to carry the traffic volume of the neighborhood. Also, it is preferred in modern municipal planning to eliminate alleys in residential neighborhoods and to have streets at intervals of 500 to 600 feet instead of 200 to 300 feet apart. Therefore, the portion of "I" Street to be closed and the portion of the alleys to be closed are not required for corporate purposes of the City of Little Rock.

f. All property abutting the portions of the street and alleys to be closed is owned by Albert L. Fletcher, as Bishop of Little Rock, as a corporation

sole.   As such corporation, the petitioner operates Holy Souls Elementary School, an educational institution with more than 650 regular daily students, and Holy Souls Catholic Church.   Both of these institutions are located South of "I" Street at the location in question on Blocks 15 and 16, Hollenberg's Addition.   Those institutions make a joint use of their existing facilities.   The petitioner Fletcher proposes to expand the facilities to the North side of "I" Street and needs to use the space in the street and alleys to be closed for the construction of the new facilities.

g.  By his written petition, the petitioner Fletcher has consented to the vacation of the street and alleys in question.   The Board of Directors finds that the public interest and welfare of the City will be benefited by granting the petition; **."

In Sections 1 and 2 of the ordinance, the city released, vacated and abandoned all of its rights and the right of the public generally in and to those portions of "I" Street and the alleys in question.

Testimony on behalf of the property owners in this regard showed that the property of at least some of them was included in street improvement districts which had improved the streets in the area, including the portion of "I" Street to be closed.   The improvements included paving and installation of curbs and gutters.

Appellees showed that something over 900 cars a day used the block of "I" Street to be closed and that there was fairly heavy foot traffic because there were more sidewalks on "I" Street than the other streets in the neighborhood.   There was testimony tending to show:

"I" Street constitutes a preferable entrance to and exit from the neighborhood because its approach to Kavanaugh Boulevard, one of the principal traffic art-

eries in that part of the city, was more nearly level than approaches at "H", "J", "L" and Evergreen Streets; the "H" Street entrance to Kavanaugh, one block south of the "I" intersection, is uphill and runs into Kavanaugh at the intersection of the latter with Van Buren Street; "J" Street is one block north of "I" and lacks one block of going as far west as "I", its entrance to Kavanaugh is uphill and visibility there is impaired by buildings; Evergreen, two blocks north of "I", is wider than either of the other alternate streets, but it has an upbill entrance to Kavanaugh and no sidewalks; there are curbs and gutters on "I" Street from Kavanaugh to Fillmore where it terminates; parents transporting children to Mount St. Mary's, Fair Park Elementary and Forest Heights Junior High School, as well as those attending Holy Souls School, use "I"; at times during the day there is heavy pedestrian traffic involving school children, principally from Holy Souls School; during icing conditions in the winter, the level entrance provides easier and safer access to Kavanaugh and ice tends to melt faster on "I" Street than on other streets entering onto Kavanaugh.

One of the property owners admitted that many people choose to use the "H" Street, "J" Street and Evergreen intersections with Kavanaugh. He also said that the closings would not prevent him from having access to the neighborhood or any point in the city, nor would they cause an increase in travel distance to exceed a block or two and travel to exceed a minute or two. This condition would also be true as to the other protesting property owners. Another appellee, whose experience qualified him as a safety expert, agreed with the statement in Ordinance #11944 that other east-west streets in the vicinity were sufficient to carry the traffic volume in the neighborhood during good weather; however, he stated that in winter weather, ice tends to melt faster on "I" Street than the others. Most of the property owners testified that traffic was increasing on "I" and the other streets in the neighborhood and that the closing of this block

on "I" Street would place an additional traffic burden on the adjoining streets.

On the other hand, appellants offered the testimony of Mr. Henry M. de Noble, Director of Community Development and former Director of Planning and Traffic, who is a traffic engineer. He had been employed in his profession since 1948 and by the City of Little Rock for nine years. He recommended to the city council that this block on "I" Street and the alleys be closed. He testified that there are sufficient other streets in the vicinity to handle the traffic flow with safety and adequate access to all property in the area with these ways closed. According to him, "H" Street carries 2,400 vehicles daily and has a capacity of 6,000; "J" Street currently has a traffic flow of 175 vehicles daily, and its capacity is 6,000; Evergreen's current traffic is 2,500 daily, and its capacity is 6,000. The latest traffic count on "I" Street was 970 vehicles on a particular day. Mr. de Noble's study of accident records showed that there had been two accidents at Kavanaugh and "J" in the last ten years; eight at Kavanaugh and Evergreen; and nine at Kavanaugh and "I". He further testified that the closing of this portion of "I" Street would fit the approved traffic pattern. This pattern contemplates parallel streets approximately 300 to 400 feet apart and cross streets one quarter mile apart. The creation of larger blocks results in fewer streets to maintain and lower accident potential. Mr. de Noble classified "I" Street as a "hop, skip and jump street," by reason of the fact that there are five separate segments of the street. Three of the properties intervening are the locations of schools. According to him, these interruptions create an unfavorable traffic condition. It was his opinion that the streets and areas involved in this action are not required for city purposes and it should be beneficial to the public to close them.

In considering the questions presented to us by this appeal, it is essential that we give consideration both to

the powers and responsibilities of the city and to the rights of the property owners.

A city is a creature of the state and its function is to aid the state in the regulation and administration of local affairs. *City of Piggott* v. *Eblen,* 236 Ark. 390, 366 S.W. 2d 192. When a power is conferred upon a city, a discretion in the exercise of the power, both as to use and extent of the use, is vested in its governing body. *Lackey* v. *Fayetteville Water Co.,* 80 Ark. 108, 96 S.W. 622; *Little Rock Ry. & Elec. Co.* v. *Dowell,* 101 Ark. 223, 142 S.W. 165, AC 13D 1086; *North Little Rock* v. *Rose,* 136 Ark. 298, 206 S.W. 449; *Arkansas Power & Light Co.* v. *Cooley,* 138 Ark. 390, 211 S.W. 664; *Herring* v. *Stannus,* 169 Ark. 244, 275 S.W. 321; *Street Imp. Dist. No. 130* v. *Crockett,* 181 Ark. 869, 28 S.W. 2d 331; *Springfield* v. *City of Little Rock,* 226 Ark. 462, 290 S.W. 2d 620.

Matters pertaining to regulation of streets and alleys and their use are among those over which cities have authority to act and to exercise discretion. Ark. Stat. Ann. § 19-2303 (Repl. 1956); *House* v. *City of Texarkana,* 225 Ark. 162, 279 S.W. 2d 831. The care, supervision and control of public ways are vested in city governing bodies. Ark. Stat. Ann. § 19-3801, et seq. They have the power to open, widen, straighten, establish, improve, maintain and light streets and alleys and to assess charges against property owners for those purposes. Ark. Stat. Ann. § 19-2313; *Holt* v. *City of Texarkana,* 168 Ark. 847, 271 S.W. 960. They may adopt a master street plan designating the location, characteristics and functions of streets and highways, with provision for removal, relocation, vacation and abandonment of ways shown thereon. Ark. Stat. Ann. § 19-2828 (d) (Supp. 1967). They may compel abutting owners to build sidewalks and curbs and gutters therealong. Ark. Stat. Ann. § 19-3806—7 (Repl. 1956); *Brizzolara* v. *City of Ft. Smith,* 87 Ark. 85, 112 S.W. 181; *Malvern* v. *Cooper,* 108 Ark. 24, 156 S.W. 845. They

may permit the use of streets by electric power companies and irrigation corporations. Ark. Stat. Ann. § 35-301 and § 35-1207 (Repl. 1962). They may grant the use of air rights over streets to owners of private property. Ark. Stat. Ann. § 76-137 (Supp. 1967). In addition, they are given the power to alter, change the width or extent of streets and alleys and to vacate such portions thereof as may not for the time being be required for public purposes Ark. Stat. Ann. § 19-2304 (Repl. 1956). (See *Kemp* v. *Simmons,* 244 Ark. 1052, 428 S.W. 2d 59, where the identical power of cities of the second class was sustained.) They are also authorized to vacate public streets and alleys or portions thereof where they have not been used by the public for five years or where all abutting property is owned by an educational institution. Ark. Stat. Ann. § 19-3824, et seq. With such broad powers over streets and alleys, it seems that the latitude of discretion vested in city governing boards should be very wide indeed.

Every reasonable presumption must be indulged that any ordinance adopted by a city within the scope of its power is valid and not unreasonable or arbitrary, and may be overcome only by clear and satisfactory evidence. *House* v. *City of Texarkana, supra; Deloney* v. *Rucker,* 227 Ark. 869, 302 S.W. 2d 287; *Goldman & Co.* v. *City of North Little Rock,* 220 Ark. 792, 249 S.W. 2d 961; *Sander* v. *City of Blytheville,* 164 Ark. 434, 262 S.W. 23; *Shaw* v. *Conway,* 179 Ark. 266, 15 S.W. 2d 411; *City of North Little Rock* v. *Rose,* 136 Ark. 298, 206 S.W. 449; *Pierce Oil Corp.* v. *City of Hope,* 127 Ark. 38, 191 S.W. 402, aff'd. 39 S. Ct. 172, 248 U.S. 498, 63 L. Ed. 381; *City of Helena* v. *Miller,* 88 Ark. 263, 114 S.W. 237.

Where a city board is invested with discretion in any matter, the exercise thereof may not be divested or controlled by reviewing courts, nor may the courts substitute their judgment for that of the board. *Little Rock Ry. & Elec. Co.* v. *Dowell,* 101 Ark. 223, 142 S.W. 165, Ann. Cas. 1913D 1086; *City of North Little Rock* v. *Rose, supra; Lackey* v. *Fayetteville Water Co.,* 80 Ark.

108, 96 S.W. 622; *Springfield* v. *City of Little Rock*, 226 Ark. 462, 290 S.W. 2d 620; *City of Little Rock* v. *Fausett & Co.*, 222 Ark. 193, 258 S.W. 2d 48; *Herring* v. *Stannus*, 169 Ark. 244, 275 S.W. 321; *Street Imp. Dist. No.* 130 v. *Crockett*, 181 Ark. 869, 28 S.W. 2d 331.

This court long ago recognized that the varied uses and conflicts of city life required that much must be left to the discretion of city authorities, whose actions should not be judicially interfered with unless manifestly unreasonable and oppressive, an unwarranted invasion of private rights, or clearly in excess of powers granted. *State* v. *City of Marianna*, 183 Ark. 927, 39 S.W. 2d 301; *Sander* v. *City of Blytheville, supra.* In considering matters pertaining to streets, this court said in *City of Marianna* v. *Gray*, 220 Ark. 468, 248 S.W. 2d 379:

"The exercise of the broad discretion granted municipal governing bodies in matters pertaining to the use of the streets and sidewalks of a city may not be overturned by the courts except on a clear showing that the action taken or refused was arbitrary, unreasonable or discriminatory."

The city board of directors made specific findings that the public ways vacated are not required for corporate purposes and that the public interest and welfare will be benefited by their closing. Before the courts can reject these findings, it must be shown that they were unreasonable and arbitrary. *City of Little Rock* v. *Fausett & Co., supra; Evans* v. *City of Little Rock*, 221 Ark. 252, 253 S.W. 2d 347. The action of the city council is final if there is room for reasonable difference of opinion on the question. *House* v. *City of Texarkana*, 225 Ark. 162, 279 S.W. 2d 831.

In view of the evidence before the trial court, it cannot be said that the action of the city was unreasonable, arbitrary, oppressive, or in excess of its powers granted by Ark. Stat. Ann. § 19-2304. The identical

power in cities of the second class was recently sustained by this court. *Kemp* v. *Simmons,* 244 Ark. 1052, 428 S.W. 2d 59.

Under the evidence here, we may also sustain the proceeding, as against contentions that the action was unreasonable, arbitrary and in excess of the city's powers under §§ 19-3824—30   The procedure prescribed was followed and the essential findings clearly made by the board of directors.   The trial court found, however, that the owner of the property is not an educational institution, contrary to the express finding by the city directors.   Under the undisputed evidence here, we think that the courts have no right to reject their finding.

Each of the conveyances of the abutting property was made to Fletcher as Bishop and his successors and assigns.   Under the common law, the existence of corporations sole was recognized and bishops were said to constitute corporations sole.   A corporation sole consists of one person only and his successors, who are incorporated by law, in order to give them legal capacities and advantages which they could not have in their natural persons.   I Blackstone, 2 Ed. 470; 2 Kent, 14th Ed.   This concept of corporation sole has been recognized as a part of the common law in other jurisdictions. *Terrett* v. *Taylor,* 13 U.S. 42, 3 L. Ed. 650 (1815); *Overseers of The Poor* v. *Sears,* 22 (Pick) Mass. 122 (1839); *Weston* v. *Hunt,* 2 Mass. 500 (1807); *The Inhabitants of The First Parish in Brunswick* v. *John Dunning,* 7 Mass. 444 (1811); *Santillan* v. *Moses,* 1 Cal. 92 (1850); *Archbishop* v. *Shipman,* 79 Cal. 288, 21 P. 830, (1889); *Reid* v. *Barry,* 93 Fla. 849, 112 So. 846 (1927); *Willard* v. *Barry,* 113 Fla. 409, 152 So. 411 (1933).

While the existence of the corporation sole can well qualify Bishop Fletcher and his successors as an institution, the church property would not be that of an educational institution simply because it conducted religious education.   The evidence in this case, however,

discloses that Holy Souls Elementary School has been operated at the present location under the supervision and authority of Bishop Fletcher. There is also a school for retarded children there. The school has grown from two classrooms to eighteen. Its academic credits are transferrable to the public schools. Its enrollment has been as high as 650 and is now 490. The building of a new church and rectory and the development of parking facilities for Sunday use that could also be used for playgrounds during the week are proposed. All of these would be located on blocks 9 and 16. Later, an auditorium would be built. Part of the parking and play area would be north of "I" in block 9, as would a new rectory. The new church building would be located in blocks 9 and 16 and on a part of the block "I" in question. The proposed rectory would be located on block 9, north of "I", and house the business offices of the parish, the church and the school. Bible instruction and instruction in the masses of the church now given in the present church building would be given in the new building.

The Supreme Court of Arizona has defined the meaning of the words "educational institution" in *Lois Grunow Memorial Clinic* v. *Oglesby*, 42 Ariz. 98, 22 P. 2d 1076 (1933), as follows:

> "An educational institution has been judicially defined as 'one which teaches and improves its pupils; a school, seminary, college or educational establishment.' *Cumberland Lodge No. 8, F.&A.M.* v. *Nashville,* 127 Tenn. 248, 154 S.W. 1141; *Curtis* v. *Allen,* 43 Neb. 184, 61 N.W. 568; *Essex* v. *Brooks,* 164 Mass. 79, 41 N.E. 119; *Peck* v. *Clafin,* 105 Mass. 420; *North St. Louis Gymnastic Society* v. *Hudson,* 85 Mo. 32."

The Supreme Court of Tennessee held that the words "educational institution" mean school, seminary, college or educational establishment, but not necessar-

ily a chartered institution. *Ward Seminary for Y. L.* v. *Mayor,* 129 Tenn. 412, 167 S.W. 113 (1914).

The words do not imply limitation to public organizations, as distinguished from private ones, or to corporations as distinguished from individuals. *In re Shattuck's Will,* 193 N.Y. 446, 86 N.E. 455; *In re Sutro's Estate,* 155 Cal. 727, 102 P. 920 (1909); *Ward Seminary* v. *Mayor, supra.*

We think the scope of an educational institution is well set out in *Commissioners, District of Columbia* v. *Shannon & Luchs Const. Co.,* 17 F. 2d 219 (CA D.C. 1927) as follows:

"* * * An educational institution consists, not only of the buildings, but of all the grounds necessary for the accomplishment of the full scope of educational instruction. More properly defined, a modern educational institution embraces those things which experience has taught us are essential to the mental, moral, and physical development of the pupils. It is not the modern conception of a public school that it be erected on a lot merely large enough in area to contain the school building. In addition to the buildings there should be playground space, basketball stops, chinning bars, room for calisthenics, all in the open air. It is also for the general welfare and safety that the school children be furnished a place in which to play, removed from the dangers of street traffic. ¶ That these accessories are an essential part of a modern educational institution is in line with the recent decisions of many courts."

It was also pointed out in that case that education may include development of physical faculties, teaching of Bible and other religious evidences, and improvement of moral and religious natures, as well as the cultivation of the mind.

We think the city's finding that the abutting property was owned by an educational institution in the sense of Ark. Stat. Ann. § 19-3825, rather than the chancellor's finding to the contrary, is supported by the preponderance of the evidence.

There remains, however, the question whether there has been an unwarranted invasion of property rights by the city's action. In matters such as these, a citizen and taxpayer, as such, has no standing to complain. *McKnight* v. *Tate,* 222 Ark. 564, 261 S.W. 2d 793; *Citizens' Pipe Line Co.* v. *Twin City Pipe Line Co.,* 178 Ark. 309, 10 S.W. 2d 493. In this respect, this case is different from *Lancaster* v. *Incorporated Town of Mountain View,* 227 Ark. 596, 300 S.W. 2d 603, where citizens and taxpayers joined the Incorporated Town of Mountain View in preventing a private obstruction of public streets. There the citizens and taxpayers were acting in the interest of the town, while they are challenging an act of the municipality here.

The city did not lose any of its authority over the street on account of the power given the improvement district to make improvements thereon and the property owners did not gain any proprietary interest on that account. *Williams* v. *City of Ft. Smith,* 165 Ark. 215, 263 S.W. 397.

It has long been recognized, however, that relief against the closing of a public way may be given to those who suffer special and peculiar injury distinct from that of the public in general. *Wellborn* v. *Davies,* 40 Ark. 83; *Arkansas River Packet Co.* v. *Sorrells,* 50 Ark. 466, 8 S.W. 683. This special injury or damage must be such as is not common to the general public and not a matter of general public inconvenience. Before an inconvenience can constitute a special injury or damage it must be one which is different in character and not degree from that which every citizen suffers, whose business or pleasure causes him to travel the way. *Wellborn* v. *Davies, supra; Hot Springs R.R. Co.* v. *William-*

*son,* 45 Ark. 429; *Stoutemeyer* v. *Sharp,* 89 Ark. 175, 116 S.W. 189. In *Little Rock & Hot Springs W. Ry. Co.* v. *Newman,* 73 Ark. 1, 83 S.W. 653, this court followed definitions of the Supreme Courts of Illinois and Michigan holding that a property owner suffers no special damage where his property is not adjacent to the streets and alleys vacated and the access, ingress and egress from his lot are not affected by the vacation of streets and alleys in another block. Many of these authorities were reviewed in the case of *Risser* v. *City of Little Rock,* 225 Ark. 318, 281 S.W. 2d 949, wherein residents of another part of Little Rock sought to prevent the abandonment of a small portion of East Tenth Street and to relocate East Twenty-Sixth Street for a distance of a little over one-half mile. These portions of the street were closed on authority of Ark. Stat. Ann. § 19-2304. There the inconvenience of travelers in turning two corners and traveling a little further, requiring less than a minute in additional time, was said to be not peculiar to these property owners because the street was an outlet from the city to one of the most thickly populated sections of the county so that every person who traveled the street suffered the same inconvenience as the property owners there. Diminution of property values resulting from inconvenience of additional travel was also held not to constitute special damages in *Wenderoth* v. *Baker,* 238 Ark. 464, 382 S.W. 2d 578. We conclude that appellees are in no different position from the property owners in *Risser* v. *City of Little Rock, supra,* and that they have shown no damage that differs, except in degree, from that suffered by anyone who might be traveling the ways in question on business or pleasure. For this reason we hold that the finding of the chancellor as to the closing of "I" Street is against the preponderance of the evidence and that the decree should be reversed in this respect.

What we have said with respect to "I" Street would apply equally to the alleys, except for the position of appellee Savary. This property owner has his residence near the corner of Tyler and "J" Streets, and

the rear of his lot abuts upon the portion of the alley through block 9 which would not be closed. He testified that he used his backyard for parking several cars and a boat. He commonly approached the back part of his property from "I" Street to the south because the south portion of the alley was more level than the north end and was a better approach. His objection to approaching from "J" Street was that the rear end of his automobile would drag. The trial court found that the property owner had offered no compelling and extrinsic reasons that the alleys were needed for the use of persons other than the owners of the property abutting thereon. Mr. de Noble testified that he had no difficulty making an entry into the alley from "J" Street and that the pastor of Holy Souls Church had agreed to make such repairs to this portion of the alley as the city suggested.

It is true that an owner of property which does not abut upon the public way suffers special damage, as an injury differing in kind from that suffered by his neighbors, if he is deprived of any entrance to or exit from his property. *Campbell* v. *Ford,* 244 Ark. 1141, 428 S.W. 2d 262; *Lincoln* v. *McGehee Motel Co.,* 181 Ark. 1117, 29 S.W. 2d 668; *McKnight* v. *Tate,* 222 Ark. 564. 261 S.W. 2d 793; *Sullivant* v. *Clements,* 180 Ark. 1107, 24 S.W. 2d 320; *Langford* v. *Griffin,* 179 Ark. 574, 17 S.W. 2d 296; *Arkansas River Packet Co.* v. *Sorrells,* 50 Ark. 466, 8 S.W. 683.

The closing of an alley which a property owner had used as a convenient but not necessary passageway to and from his property was sustained in *Cernauskas* v. *Fletcher,* 211 Ark. 681, 201 S.W. 2d 999. We cannot say that the finding of the chancellor on the conflicting testimony on this point is against the preponderance of the evidence.

Appellees rely heavily upon *Brooksher* v. *Jones,* 238 Ark. 1005, 386 S.W. 2d 253. That case is easily distinguished from this. The only finding as to basis

for the closing made by the city commission was that it was "for the purpose of allowing Safeway Stores, Incorporated . . . to build, construct and own buildings and other improvements over and across the designated portion of Birnie Avenue." We clearly pointed out in that opinion that before the street could be closed it must first be shown that the portion being closed was not required for public purposes. Summary judgment was granted the property owners on uncontroverted affidavits presented by them. Not only was there no finding that the street was not required for corporate purposes, as there was here, no evidence to support such a finding was offered.

Appellees also rely upon *Roberts* v. *Pace*, 230 Ark. 280, 322 S.W. 2d 75. This decision is also easily distinguishable. There the alley was closed at its south end by abutting property. The city closed the other end under § 19-3824, et seq., upon petition of the abutting owners. In contrast with the situation here, the undisputed evidence there showed that the abutting property owner in the interior of the block would be deprived of any ingress or egress via the alley. We said that no opinion was expressed as to what our holding would be if the south end of the alley was not closed. We also clearly stated that the action in that case would not be res judicata of any nature litigation between the same parties instigated under § 19-2304.

We reverse the decree on appellants' appeal and affirm it on appellees' appeal. The cause is remanded for entry of a decree consistent with this opinion, since title to real property is affected.

BYRD, J., dissents.

FOREST HEIGHTS JR. HIGH SCHOOL

FILLMORE STREET

TAYLOR STREET

"H" STREET

"I" STREET

"J" STREET

EVERGREEN STREET

POLK STREET

BLOCK 15

Closed

BLOCK 16

alley

BLOCK 9

alley

TYLER STREET

HARRISON STREET

CLARKSON STREET

KAVANAUGH BLVD.

ST. MARY'S ACADEMY

VAN BUREN STREET

"A PART OF HOLLENBERG ADDITION TO THE CITY OF LITTLE ROCK"

A Drawing Showing