The Honorable David L. Gibbons Prosecuting Attorney Fifth Judicial District P.O. Box 3080 Russellville, AR 72811
Dear Mr. Gibbons:
I am writing in response to your request for my opinion on the following questions:
 1. Is it a violation of state law for an alderman to vote on a petition by the church of which he is a member to close the public street on which the church abuts on both sides?
 2. Is it a conflict of interest for the alderman to vote on the petition by the church of which he is a member to close the public street on which the church abuts on both sides?
 3. If it is a conflict of interest and the alderman votes on the matter and the petition is approved and an ordinance is passed closing the public street, could the vote by the alderman be grounds for the ordinance to be ruled void in a court of law if challenged by someone?
You have submitted these questions on behalf of the Russellville City Attorney, who reports that a church attended by a Russellville alderman intends to petition the city council, pursuant to either A.C.A. §14-54-104, § 14-301-301 et seq., or § 14-301-401 et seq., to vacate a street running through church property, thus making the street available for church development. The alderman has apparently expressed concern that he might be precluded from voting on the issue by his membership in the church.
RESPONSE
With respect to your first question, A.C.A. § 21-8-304(a) bars an alderman from voting on an issue "to secure special privileges or exemption" unavailable to others. Only a finder of fact can determine whether this has occurred in any particular case. Whether or not any alderman is barred from voting on the matter, however, Section 14-54-104
of the Code provides that even a disinterested city council can close a public street only if public access is no longer "required for corporation purposes." Given the facts as recited, I doubt either the alderman who raised this issue or anyone else on the city council could close the street pursuant to A.C.A. § 14-301-301 et seq., or § 14-301-401 et seq.,
because (1) the former subchapter of the Code applies only to dedicated public streets and alleys not used for at least five years or abutted by property owned by an educational institution and (2) the latter subchapter applies only to alleys. With respect to your second question, a public official is precluded at common law from using his office for personal profit or to exalt his personal interest above his public duty. I cannot answer the factual question of whether a conflict exists under this standard in the specific example you have recited. With respect to your third question, I believe a court might rule the ordinance void if it determined that the alderman voted in its favor despite facing a conflict of interests and if the ordinance would not have passed but for his vote.
Question 1: Is it a violation of state law for an alderman to vote on apetition by the church of which he is a member to close the public streeton which the church abuts on both sides?
Given that your second question focuses on the issue of whether the vote might be challenged based on a common-law conflict of interests, I assume that your first question focuses exclusively on the possible application of statutory law. Subsection 21-8-304(a) of the Arkansas Code (Supp. 2001) provides:
 No public official or state employee shall use or attempt to use his or her official position to secure special privileges or exemption for himself or herself or his or her spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he or she has a substantial financial relationship that is not available to others except as may be otherwise provided by law.
I consider it unlikely that the city council's closing of a street adjacent to a church would qualify as the bestowal of a "special privilege" on a voting alderman simply because he belongs to the church.See response to question 2, infra (noting that mere membership in an advantaged class does not amount to a conflict of interests at common law). I must stress, however, that the ultimate determination of whether the alderman would secure a "special privilege" by an ordinance vacating the street will be one of fact based upon a thorough consideration of all the circumstances, possibly including the extent and nature of the alderman's relationship with the church.
Although you have inquired only about the application of state law, I should note that local ordinances might further set forth ethical standards for municipal officers that might bear on the alderman's situation. The Russellville City Attorney should be aware whether any such ordinances exist.[1]
Question 2: Is it a conflict of interest for the alderman to vote on thepetition by the church of which he is a member to close the public streeton which the church abuts on both sides?
The common law prohibition against conflicts of interests provides as follows:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
67 C.J.S. Officers § 204. See also Ark. Ops. Att'y Gen. Nos. 2002-065; 2000-072; 99-349; 98-275; 94-283; and 94-446, citing Van Hovenberg v.Holman, 201 Ark. 370, 144 S.W.2d 719 (1940); Madden v. United StatesAssociates, 40 Ark. App. 143, 844 S.W.2d 374 (1992); Acme Brick Co. v.Missouri Pacific R.R., 307 Ark. 363, 821 S.W.2d 7 (1991); and 63A Am.Jur. 2d, Public Officers and Employees § 321.
As my predecessor noted in Ark. Op. Att'y Gen. No. 95-099:
 The "conflict of interest theory" is based "on the fact that an individual occupying a public position uses the trust imposed in him and the position he occupies to further his own personal gain. It is the influence he exerts in his official position to gain personally in spite of his official trust which is the evil the law seeks to eradicate." City of Coral Gables v. Weksler, 164 So.2d 260, 263
(Fla.App. 1964). See also generally 63A Am. Jur. 2d Public Officers and Employees § 321 (1984).
In Ark. Op. Att'y Gen. No. 93-184, my predecessor summarized the operative inquiry as being whether the officer "has a personal interest which might interfere with the unbiased discharge of his duty to the public." The furtherance of the officer's personal interest is thus the focal point of inquiry in determining whether an unlawful conflict of interest exists at common law. See Van Hovenberg v. Holman,201 Ark. 370, 144 S.W.2d 719 (1940).
This office has held on various occasions that no conflict of interests will exist at common law where the official's conduct benefits him merely as a member of a class. In Ark. Op. Att'y Gen. No. 2000-302, my predecessor offered the following in considering whether a justice of the peace who was also an attorney might sponsor legislation benefiting the court system in which he practiced:
 Ordinarily, . . . a quorum court member would not be disqualified from sponsoring a county ordinance where his interest was only as a member of a class. See, e.g., Op. Att'y Gen. 89-044 (no unlawful conflict of interest where a justice of the peace votes to appropriate funds supporting a school system in which he is employed, in the absence of facts implicating his own, direct pecuniary interest).
See also Ark. Ops. Att'y Gen. Nos. 2000-072 (opining that a school board member who was also a member of the plaintiff class in an action against the school district was not legally precluded from participating in board actions relating to the litigation); 86-267 (opining that a city councilman who was also the manager of a state school for the handicapped was not ethically precluded from voting to blacktop a road around the school). Logic would suggest that if it is not unethical for a quorum court member to vote on issues that might affect his own and his coworkers' economic prospects, it would a fortiori pose no ethical problem for an alderman to approve closing a road that abuts a church he and others attend. However, only a finder of fact could determine whether the alderman's vote in this particular instance might be impermissibly influenced by pure self-interest.
Question 3: If it is a conflict of interest and the alderman votes on thematter and the petition is approved and an ordinance is passed closingthe public street, could the vote by the alderman be grounds for theordinance to be ruled void in a court of law if challenged by someone?
In my opinion, the answer to this question is "yes," so long as the conflict is determined to have been real and the alderman's vote provided the margin of victory in the vote on the challenged ordinance. Indeed, this is precisely what occurred in Holman, in which a group of residential property owners successfully challenged an ordinance granting one of the voting aldermen's tenants a permit to operate a service station in the neighborhood. Although the aldermen other than Holman voting to grant the permit would have comprised a majority of those voting on the question, they would not have comprised the required majority of the entire board. 201 Ark. at 373-74. The court ruled that "Holman as an alderman was incompetent to vote for a permit in favor of [the tenant] in order to make possible the consummation of a lease whereby Holman, individually, would profit." Id. at 376. The court accordingly ruled that the appellants should be granted their prayer for relief enjoining operation of the service station.
Two aspects of the Holman ruling bear mention. First, the court's grant of injunctive relief apparently turned on the fact that the improper vote was crucial in passing the ordinance. Secondly, Holman's interest in the matter at issue was both pecuniary and direct — conditions that might not apply to the alderman at issue in your request. As noted above, assuming the alderman in the present case had no direct pecuniary interest in the city's vacating the street and could be described as benefiting only by virtue of his membership in the class of parishioners, I doubt that a court would characterize his circumstances as involving a conflict of interests. However, as noted above, only a finder of fact can ultimately determine whether a conflict exists.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] Although he has not directly raised the issue in his question, I will address in passing the Russellville City Attorney's suggestion in his recital of the facts that any of the recited statutes would authorize a disinterested city council to vacate the street. I do not believe the council possesses such authority pursuant to A.C.A. § 14-301-301 et seq.
(1987), since this subchapter applies only to dedicated streets that have not been used for five years or streets abutted by property owned by an educational institution or college. My inquiries reveal that neither of these conditions applies. I likewise doubt the council possesses such authority pursuant to A.C.A. § 14-301-401 et seq. (1987), since this subchapter applies only to "alleys" — a term the statute itself defines in the ordinary-language sense of an access "through or across any part of any block in the city or town." Compare A.C.A. § 14-301-301(b) (expressly directing that subchapter 3 will apply to either "streets or alleys"). As this definition suggests, whereas streets are normally relatively broad arteries that surround and define blocks, alleys are narrower arteries that traverse blocks and connect streets. The Russellville City Attorney informs me that he considers the roadway at issue a street, not an alley. However, A.C.A. § 14-54-104 (Repl. 1998) authorizes the council of a city of the first class to vacate any portions of a street not "required for corporate purposes." Only a finder of fact could determine whether this condition has been met in this instance. See City of Little Rock v. Linn, 245 Ark. 260, 270,432 S.W.2d 455 (1968) (exhaustively analyzing the facts surrounding the vacating of various streets and alleys in the Heights area of Little Rock to allow for the expansion of facilities in the Holy Souls Catholic Church complex). The court in Linn further noted that a plaintiff whose property abuts the vacated street or who claims some "special or peculiar injury distinct from that of the public in general" might object that vacating the street amounts to "an unwarranted invasion of property rights." Id.
at 274.