In re BLACK ENTERPRISES,
INC., Debtor.

GUAM ECONOMIC DEVELOPMENT
AUTHORITY, Plaintiff,

v.

BLACK ENTERPRISES, INC.,
Defendant.

In re Lydia F. BLACK, Debtor.

GUAM ECONOMIC DEVELOPMENT
AUTHORITY, Plaintiff,

v.

Lydia F. BLACK, Defendant.

Bankruptcy Nos. 82–0017, 82–0018.

United States Bankruptcy Court,
D. Guam.

Oct. 26, 1982.

Russell H. Tansey, Agana, Guam, for
debtor-defendant, Lydia Black.

John Moore, Agana, Guam, for debtor-defendant, Black Enterprises.

Norman Ashton, Agana, Guam, for plaintiff.

JON J. CHINEN, Bankruptcy Judge.

On June 18, 1982, Lydia F. Black ("Mrs. Black") filed a chapter 11 petition under the Bankruptcy Code. Then, on June 21, 1982, Black Enterprises, Inc. ("Black Enterprises") filed a chapter 11 petition, also under the Bankruptcy Code.

On July 23, 1982, Guam Economic Development Authority ("GEDA"), an alleged secured creditor of both Black Enterprises and Mrs. Black, filed a complaint to lift the automatic stay as against Black Enterprises, followed by a similar complaint against Mrs. Black, filed on July 28, 1982.

The consolidated hearings on both complaints to lift the stay were held on September 15, 1982 before the undersigned Judge. Black Enterprises was represented by John Moore of Crain, Moore, Lawlor & Hall, and Roger Crouthamel of Carlsmith, Carlsmith, Wichman & Case. Mrs. Black was represented by Russell Tansey. GEDA was represented by Norman L. Ashton of Ferenz, Williams, Gruskin & Ashton, P.C.

Based upon the evidence adduced, the memoranda and records filed herein and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. At the commencement of the trial, the respective attorneys for GEDA, Black Enterprises and Mrs. Black stipulated to the following facts:

(a) That as of August 19, 1982, Black Enterprises was indebted to GEDA in the sum of $690,974.33 principal and interest accrued as of such date, with interest continuing to accrue at the respective note rates from and after such date. The parties further stipulated and agreed that the original Black Enterprises loans from GEDA were in default, and that GEDA was a secured creditor via leasehold mortgages, chattel mortgages, UCC–1 financing statements, assignment of rents and security agreements properly signed and delivered by Black Enterprises to GEDA. It was stipulated and agreed that the leasehold mortgages, chattel mortgages, assignments, rents, promissory notes, assignment of sublease, and other documents annexed as exhibits to GEDA's complaints to lift stay against Black Enterprises were true and accurate copies of the original instruments, and that the same were validly signed and delivered by Black Enterprises to GEDA. All of such documents and instruments were admitted in evidence by stipulation.

(b) That the mortgage and guarantee instruments signed by Mrs. Black to GEDA and annexed as exhibits to GEDA's complaint to lift stay against Mrs. Black were true and accurate and such instruments had been signed by Mrs. Black and that the same were also admitted into evidence. The parties agreed to stay trial on the challenges to the continued enforceability of Mrs. Black's mortgage to GEDA and of the continued enforceability of her guarantee to GEDA pending a decision by the court with respect to GEDA's complaint to lift the automatic stay against Black Enterprises.

(c) That GEDA had advanced and incurred various attorneys' fees and costs with respect to seeking enforcement and collection of its secured loan against Black Enterprises. That a hearing on the amount of such fees and the imposition of the same as additional sums secured by the Black Enterprises mortgages and other secured instruments to GEDA would be stayed pending the final hearing before the court on the issue of valuation and a decision with respect to whether GEDA is adequately protected, whether Black Enterprises has any equity in the collateral securing the GEDA debt, and whether such property is necessary for a viable reorganization of Black Enterprises.

(d) That there had been an assignment of rents executed among GEDA, Black Enterprises and the Government of Guam (De-

partment of Revenue and Taxation) with respect to monthly rents payable by various tenants of the leasehold mortgaged properties known as the Guerrero warehouses. A copy of this assignment of rent agreement was introduced in evidence. By earlier order of this Court, at the preliminary hearing on GEDA's complaint to lift stay held via telephone conference, the assigned amount of rents for the Guerrero warehouses due the Government of Guam under such agreement in the monthly sum of $3,000 have been directed to be placed in a suspense account by GEDA.

2. With respect to the issue of attorneys' fees and costs, GEDA advised the court that, as of the September 15, 1982 hearing, it had already advanced and paid attorneys' fees and costs with respect to seeking enforcement and collection of the Black Enterprises loans in the sum of $8,461.00. GEDA anticipated that additional legal fees and costs already incurred but not yet invoiced, plus additional anticipated fees for bankruptcy litigation, would approximate $9,000.00, which sum could increase depending on the extent of ongoing litigation in the bankruptcy proceedings.

3. A summary description of the collateral which secured the Black Enterprises loans with GEDA is as follows:

(a) Lot 64, Unit 4, Tract 1445, Barrigada Heights (hereafter "Barrigada Heights residence"). This collateral is pursuant to a mortgage to GEDA from Eugene W. Black and Mrs. Black, the former wife of Eugene W. Black. Mrs. Black is challenging the validity of this mortgage.

(b) Leasehold mortgage from Black Enterprises to GEDA over real property Lots 13 and 14, Block 4, Calvo Memorial Park together with warehouse situate thereon (hereafter "Plastics factory property").

(c) Leasehold mortgage with assignment of rents over Lots A and B, portions of Lot 2140–5, Dededo, with four warehouses situate thereon (hereafter "Guerrero warehouses").

(d) Chattel mortgage and accompanying UCC loan financing statement with respect to various equipment and chattels situate in the Plastics factory consisting primarily of Plastics manufacturing equipment (hereafter "Plastics equipment").

4. At the final hearing, this Court continued in force and effect its earlier order requiring Black Enterprises to assume or reject that certain executory sublease originally entered into by and between Black Enterprises and Cathay Plastics which such sublease was subsequently assigned by Cathay to GEDA, and which assignment was admitted into evidence in this proceeding. Black Enterprises is to assume or reject this sublease on or before September 30, 1982.

5. At the final hearing, GEDA called as its witness Woodrow Gaspard, who was duly qualified as an expert and whose testimony was admitted into evidence together with his supporting written appraisal reports.

6. Mr. Gaspard's opinion of the fair market value of the various described collateral was as follows:

A. Barrigada Heights residence: $174,000.00

This residence is subject to a first mortgage held by the Bank of Hawaii with an outstanding balance of $44,000, resulting in an equity interest to Mrs. Black of $130,000.00.

B. Guerrero warehouses: $286,900.00
C. Plastic Factory property:

For the Plastic Factory property, Mr. Gaspard submitted two appraisals. He first appraised the leasehold interest in such property as though there were no restrictive covenants limiting the use of the leasehold premises. Then, he made a separate appraisal based on the assumption that such leasehold premises were restricted solely to plastics manufacturing.

Based on a non-restrictive use of such property, Mr. Gaspard valued the leasehold interest of Black Enterprises in the Plastics factory property at $119,400.00. Based on a restrictive use of the leasehold interest

solely to that of plastics manufacturing, he placed the leasehold value of Black's interest at $5,500.00.

D. Plastics equipment.

Mr. Gaspard's opinion of value with respect to the Plastics equipment was broken into three categories: a replacement depreciated value, a sound value (going concern value), and a group auction value. Mr. Gaspard's respective opinion of value for these categories was $194,935 for replacement value, $155,984.00 as a sound (going concern) value and $62,394.00 as a group auction value. Based on Mr. Gaspard's prior experience with Guam's limited market for specialized equipments such as plastics manufacturing equipment, it was his opinion that the most representative market value for the plastics equipment would be that of the group auction value which he placed at $62,400.00.

7. A summation of the Gaspard appraisals computes as follows:

| | Fair Market Value |
|---|---|
| Barrigada Heights residence: | |
| $174,000 fair market value less $44,000 first mortgage | $130,000 |
| Guerrero warehouses: | $286,900 |
| Plastics factory property: | |
| non-restricted fair market value | $119,400 |
| Plastics equipment: | $ 62,400 |
| TOTAL: | $598,700 |

If the Gaspard appraisal based upon restrictive use limitation of the plastics warehouse property were utilized, the leasehold value of this property drops from the sum of $119,400.00 to $5,500.00 and the total valuation of all of the collateral given as security for the GEDA loans is reduced to $484,800.00.

8. GEDA also introduced into evidence in support of the Gaspard appraisal on the Guerrero warehouses a present value computation for the Black Enterprises leasehold interest in such properties dated December 10, 1981 prepared by Peat, Marwick, Mitchell & Co. Based on a discount rate of 16% which Peat Marwick ascribed

as equivalent to the then current prime rate, their computation for a net present value for the Guerrero warehouses was $284,710, as compared to the $286,900 valuation of Mr. Gaspard. The discount rates used in the Peat, Marwick calculations are not to be confused with capitalization rates used by Mr. Gaspard and Griffin in their appraisals.

9. Black Enterprises called as its witness Charles Griffin who was duly qualified as an expert and whose opinion of value was admitted into evidence, including a copy of his written appraisal report. Mr. Griffin's opinion of value, which was submitted as one total value for the Guerrero warehouses and Plastics factory property, was $677,000. Mr. Griffin gave no opinion of value as to the Plastics equipment or the Barrigada Heights residence.

10. Mr. Griffin was of the opinion that there would be no change in his opinion of value for the Plastics factory property even if there were an enforceable underlying lease restricting the use of such property to plastics manufacturing. He was further of the opinion that there was in fact a market for plastics manufacturing on Guam and that no decrease in value would result from restricting use of the Plastics factory property to such use.

11. The Plastic factory property was originally subleased from GEDA to Cathay Plastics, Inc., which further subleased the premises to Black Enterprises. Cathay Plastics, Inc. subsequently assigned its sublease to GEDA.

12. The GEDA/Cathay sublease provides:

1. The LESSOR hereby leases to the LESSEE and the LESSEE leases from the LESSOR, for purposes of the LESSEE's constructing, maintaining and operating thereon facilities necessary or incident to its business of manufacturing and processing of plastic products as well as all business allied or incident thereto provided that such facilities conform to all laws and regulations of the Government of Guam, a parcel of land

containing an area of 22,618 square feet, more or less, including the right of ingress and egress to and from the leased premises, described on Schedule "B" attached hereto including site improvement thereon.

13. And the Cathay/Black Enterprises sublease provides:

2. *Purpose.* Lessee shall use the demised premises for the exclusive purpose of conducting the business of manufacturing and processing of plastic products, including all business incident thereto. Lessee shall comply with all governmental regulations affecting the operation of the demised premises....

14. GEDA contends that there is a restrictive use on the Plastic Factory property. On the other hand, Black Enterprises contends that there is no restrictive use and further that this Court should not allow the forfeiture of any property.

## CONCLUSIONS OF LAW

■ In the Cathay/Black Enterprises sublease, it is provided that the

Lessee shall use the demised premises for the exclusive purpose of conducting the business of manufacturing and processing of plastic products, including all business incident thereto.

In the case of *State v. Bridges*, 246 Ala. 486, 21 So.2d 316, in defining the word "exclusive", the Court stated:

A synonym for the word "exclusive" is the word "sole". Webter's New International Dictionary.

It is a well established rule that the parties to a lease may restrict the uses to which the lessee may put the demised premises. In *Harris v. Bissell*, 54 Cal.App. 307, 202 P. 453 (1921) the court stated:
... owners leasing lands to others may, in the lease, impose any restrictions upon the use to be made of the lands and it is not for the court to decide that some other use would serve the purposes of the owner equally well.

■ The Cathay/Black Enterprises sublease contains a use restriction similar to those use restrictions upheld in *City of Douglas v. Douglas Canning Co.*, 161 F.Supp. 379 (1958). There, public land was given for a specific purpose, to provide employment to the local community through operation of a cannery business that would benefit the local population. The cessation of the cannery business was found to be adequate grounds for the cancellation of such lease.

In the instant case, the sublease from Cathay to Black Enterprises contains specific term that the leased premises were to be used "for the *exclusive* purpose of conducting the business of manufacturing and processing of plastic products ..." (Emphasis added).

Without sufficient cause, it is not for this court to alter the terms of the sublease between Cathay and Black Enterprises. In the instant case, Black Enterprises has not shown good cause for this Court to alter or modify the terms of the provisions covering the use of the demised premises.

The facts of the instant case, are similar to those of *International Kitchens*, Bk. 77–0004 (D.Hawaii 1979) where there was a restrictive use of the leased premises for a hamburger restaurant. There, the District Court on February 23, 1979 held that the Bankruptcy Court was in error when it altered the terms of the lease to permit the prospective buyer of the lease to operate a restaurant serving Korean food rather than hamburgers.

The forfeiture and waiver arguments cited by Black Enterprises are non-persuasive especially in light of the fact that Black Enterprises, by its own amended plan and disclosure statement, admits that the GEDA loans at issue were for the express purpose of expansion through purchase of new Plastics manufacturing equipment for the plastics business.

No evidence was presented by Black Enterprises to show that the Plastics Factory property was intended for use other than plastics manufacturing. Nor was there any evidence introduced to show that Black Enterprises attempted to use said property

for any other purpose other than the plastics business.

This Court is of the opinion that the lease restrictions with respect to plastics manufacturing are valid and enforceable restrictive covenants.

The two appraisers disagree upon the effect of the restrictive use of the Plastic factory property. Whereas, Mr. Gaspard significantly decreases the value of the leasehold interest subject to the restrictive use, Mr. Griffin does not attribute any significance to the use restrictions of the property to plastics manufacturing.

The Court finds this position of Mr. Griffin inconsistent with Black Enterprises' amended disclosure statement and amended plan of liquidation filed and submitted in evidence at the valuation hearing before this court on September 15, 1982. The amended disclosure statement and plan admit that the plastics manufacturing business was never profitable, that the same has ceased to operate since the end of 1980, and that Black Enterprises, although aggressively shopping for a buyer of the plastics business since such time, has been unable to find the same. Black Enterprises admits there is no viable plan to rehabilitate the plastics business and that its only "reorganization plan" is one of liquidation. By such amended plan and disclosure statement, Black Enterprises admits there is no going concern value for the plastics business and equipment and ascribes a liquidation auction sale value to the plastics equipment of $75,000.00. This value is in harmony with the Gaspard auction appraisal value of $62,400.00.

Based on the foregoing, the Court agrees with Mr. Gaspard that the group auction value of $62,400.00 is fair for the plastics equipment and, because of the use restrictions, the market value of the Plastics factory leasehold interest is $5,500.00.

■ As to the Barrigada Heights residence, Mrs. Black asserts that, because of the conduct of GEDA and Mr. Black subsequent to the execution of the promissory note and mortgage on the Barrigada Heights residence, she is no longer bound by the promissory note and that the mortgage on her property is void. This matter is to be determined at a later date.

However, because of this challenge by Mrs. Black as above mentioned, this court cannot consider the Barrigada Heights property as part of the collateral securing the GEDA debt.

Thus, based on Gaspard's opinion of value for the Guerrero warehouses, Plastics factory property and plastics equipment, the Court finds their total value to be $354,794.00. Since the total indebtedness exceeds $690,000.00, there is no equity for Black Enterprises in the collateral securing the GEDA debt.

Even with the Barrigada Heights residence included as part of the collateral, there would be a deficiency. A summation of Mr. Gaspard's appraisals, including the Barrigada Heights residence and with the use restrictions upon the Plastics factory property, computes as follows:

| | Fair Market Value |
|---|---|
| Barrigada Heights Residence | $130,000.00 |
| Guerrero warehouses | $286,900.00 |
| Plastics factory property | $ 5,500.00 |
| Plastics equipment | $ 62,400.00 |
| | $484,800.00 |

And a summation of Mr. Gaspard's appraisals without the use restrictions upon the Plastics factory property computes as follows:

| | Fair Market Value |
|---|---|
| Barrigada Heights Residence | $130,000.00 |
| Guerrero warehouses | $286,900.00 |
| Plastics factory property | $119,400.00 |
| Plastics equipment | $ 62,400.00 |
| | $598,700.00 |

With the Plastics factory property appraised subject to the use restrictions, the deficiency is over $200,000.00. If the property is appraised without the use restrictions, the deficiency is over $100,000.00.

Based on Gaspard's appraisals, there is no equity in favor of Blacks Enterprises. Thus, there is no adequate protection for GEDA.

■ Assuming *arguendo* this Court were to accept the Griffin appraisals of the Guerrero warehouses and Plastics factory property at $667,000.00, the equity cushion is still insufficient to continue the automatic stay. To the $667,000.00, we may add the value of the plastics equipment of $62,400.00. However, because the mortgage on the Barrigada Heights residence is being challenged by Mrs. Black, this Court cannot attribute any value of said property as part of the collateral securing the GEDA debt. Thus, the total value of the collateral securing the GEDA debt under Griffin's appraisal is $737,400.00.

As of August 19, 1982, Black Enterprise owed GEDA $690.974.33 in principal and interest. Additional interest has accumulated since then, and there must be added attorney's fees and costs estimated at $17,000.00. Thus, the total debt is approximately $710,000.00. The small equity at best of 5% is not adequate protection for GEDA's interest.

In *Sanders v. Tucker (In re Tucker)* 5 B.R. 180, 2 C.B.C.2d 535 (Bkrtcy.S.D.N.Y. 1980), the Court found an equity cushion "of 7.4% of the market value of the collateral was not 'adequate protection' for creditors' interest if, among other factors, the cushion is decreasing each day due to interest charges, the property is not increasing in value and there is no protection other than the collateral which can be offered to the creditor." See also *GECC Financial Corporation v. William S. Bandy*, 39 B.R. 673 (D.Hawaii 1982).

If we should add the equity value of the Barrigada Heights residence of $130,000.00 to the $739,400.00, the total value of the collateral would be $869,400.00. This means that there would be an equity of approximately 22% for Black Enterprises in all of the collaterals. However, in the instant case, the Court finds that said equity cushion does not provide adequate protection to GEDA.

In *Diversified Mortgage Investors v. Lake Tahoe Land Co., Inc.*, (*In Re Lake Tahoe Land Co., Inc.*) 5 B.R. 34, 1 C.B.C.2d 1033 (Bkrtcy., D.Nev.1980) the Court held that adequate protection for a security in land exists when there is a cushion between the amount of the debt and the market value of the land of 40% to 50%.

Both Mr. Gaspard and Mr. Griffin agreed that lending institutions will lend up to 75% of the appraised value of real estate. If we adopt Mr. Griffin's appraisal, 75% of $869,400.00 is $652,050.00. It means that lending institutions would consider a loan of $652,050.00 adequate protection if secured by collateral worth $859,400.00, but that any loan over $652,050.00 is not adequately protected.

Whenever properties are sold, especially real estate and business equipment, there will be commissions to be paid and costs that will be incurred, including escrow fees.

There was no evidence presented to show the amount of the real estate commissions, escrow fees and the other costs that will be incurred upon the sale of the collaterals. However, there is no doubt that such costs will be incurred upon the sale of the collaterals.

In the instant case, the GEDA debt already exceeds $710,000.00. Considering the daily accumulation of interest, the challenge to the validity and enforceability of the mortgage on the Barrigada Heights residence and the costs of selling the various properties, even if Griffin's appraisal is accepted, the Court finds that the equity cushion of 22% is insufficient to afford adequate protection to GEDA.

Based on the foregoing, the Court finds as follows:

1. GEDA has a valid lien on the Guerrero warehouses, Plastics factory property and Plastics equipment. A determination of GEDA's mortgage lien on the Barrigada Heights residence is still to be adjudicated.

2. The restrictive covenants contained in the underlying GEDA/Cathay Plastics and Cathay Plastics/Black Enterprises sub-

lease, are valid and enforceable and restrict the use of the Plastics factory property to Plastics manufacturing.

3. Black Enterprises has no equity in the Guerrero warehouses, the Plastics factory property or the plastic equipment.

4. GEDA does not have and has not been offered adequate protection for its mortgage lien and security interest in the Guerrero warehouses, Plastics factory property and Plastics equipment.

5. Black Enterprises has no reasonable prospect for reorganization.

6. The stay afforded by 11 U.S.C. § 362 should be modified to permit GEDA to foreclose its mortgage liens and security interest in the Guerrero warehouses, Plastics factory property and Plastics equipment.

7. This court will set an expedited trial with respect to the challenge to the continued validity and enforceability of the GEDA mortgage over the Barrigada Heights residence. The stay afforded by 11 U.S.C. § 362 will be continued as to the Barrigada Heights property until this court has tried Mrs. Black's challenge to the continued validity and enforceability of her mortgage and guaranty to GEDA.

8. This court's earlier order continues in force and effect requiring Black Enterprises to assume or reject that certain executory sublease between Black Enterprises and Cathay Plastics which sublease is now held by GEDA as the assignee of Cathay Plastics. The assumption or rejection of this sublease must be made as directed in the Order Re: Motion to Extend Time to Assume or Reject Lease.

9. To the extent that any of the foregoing conclusions of law constitute findings of fact, they are so to be considered.